## WEEMS vs. BREWER.
## BREWER vs. WEEMS.—June, 1828.

A trustee appointed by the court of chancery sold an entire tract of land at a certain price per acre, and the sale was ratified. At the time of the sale it was known to the trustee and purchaser that a bill was pending for the recovery of an interest in such land, in opposition to those whose title the trustee was about to sell; and on the final decision under that bill it was decreed, that the complainants were entitled to one-fourth thereof. After this decision, the purchaser filed a petition in that court, setting it forth, and claiming to vacate the sale to him, on the ground, that he was induced to make the purchase because of its proximity to his own estate, and an important road leading from his estate through the purchased premises, and connecting them together; but the existence of the road referred to, not being made out in evidence, the sale being made in perfect good faith, and it appearing that the quantity of land to be obtained from the trustee was not a material consideration in the purchase; that the trustee could make a good title under the decree to three-fourths of the land; that the petitioner had secured to himself three-fourths of the remaining fourth part, and that the trustee was placed in a situation by a deed from the party having the right, to give a title to the other fourth of that part, which if the petitioner chose to accept, would secure to him the entire object of the purchase without loss—*Held*, that he could not be discharged from his contract, when the enforcement of it, subject to a proportionate deduction for that which he had purchased from others, would do him no injury.

Where the object of a purchase is not defeated, and a purchaser is not injured by the contract being enforced, he cannot be permitted to abandon it.

A purchaser claiming to be discharged from his contract, should make out a fair, and plain case for relief; and it is not every defect in the subject sold, or variation from the description, that will avail him   If he gets substantially what he bargains for, he must take a compensation for the deficiency.

Chancery weighs the object and inducement of the purchaser; and looking to the merits, and substantial justice of each particular case, if the sale be fair, relieves or not, from the purchase, according as the character of the transaction, and circumstances may appear to require.

CROSS APPEALS from the Court of Chancery. On the 9th of September 1824, the appellant in the first, and appellee in the second of these appeals, exhibited his petition to the chancellor, in which he stated, that in a cause commenced by bill filed in the court of chancery, on the 1st of October 1819, in the names of *William W. Conner, John Franklin,* and *Harriet* his wife, *Sabritt Trott,* and *Nancy* his wife, against *Abraham Fulhart,* and *Matilda* his wife, *Marmaduke W. Con-*

*ner* and *Henry C. Drury*, praying that a certain tract of land called *Holloway*, or *Oliver's Preservation*, lying in *Anne-Arundel* county, which had descended to the said *William W*, *Nancy*, *Harriet*, *Marmaduke W*, and *Matilda*, as heirs at law of their then deceased father, *William Conner*, might be sold under a decree of the court of chancery, and converted into cash, in order to a more convenient division of the same among them. That such proceedings were had that a decree was passed at July term 1821, in compliance with the prayer of the bill, and a sale of the land directed to be made by *Nicholas Brewer*, junior, esquire, the trustee, at the same time appointed by the court, on the conditions in the said decree and order of sale and appointment. That the said trustee, after having filed a bond as required by the decree and order, on the 24th of July 1821, proceeded in the manner directed in the said decree and order, to advertise and sell the said land, and on the 15th of November 1821 did sell the same at public sale to the petitioner, on a credit of two years, he being the highest bidder, at $28 20 per acre, there being 159½ acres, and the purchase money amounting to the aggregate sum of $4497 80. That the petitioner executed and delivered to the said trustee his bond, with the proper sureties, for the payment of the purchase money at the expiration of two years from the time of the sale, as by the terms of the said sale he was required to do. The petition further stated, that at the time of the commencement of the said suit, in which the said decree, sale and purchase, by the petitioner, were made as aforesaid, a certain other cause, commenced on the 22d of August 1811, by the said *Henry C. Drury*, and *Elizabeth* his wife, a certain *Frederick Mills*, and *William Stallings*, and *Achsah* his wife, and *Charlotte Johnson*, against the said *William W. Conner*, *Marmaduke W. Conner*, *Harriet*, *Nancy* and *Matilda*, (then of the name of *Conner*,) was depending in the court of chancery for the land in question. That such proceedings were had in the said last mentioned cause, that after the final decree of the said court therein, dismissing the complainants' bill, an appeal was had in the same on the prayer of the said complainants, and the said cause, and all the proceedings therein were removed for final adjudication to the court of appeals. That

such proceedings were had in the court of appeals, on the said appeal, that at June term 1824, the said court finally decreed therein, and by their decree ordered and directed, among other things, that the defendants in the said suit should, by a deed good in law, and by them to be executed, convey to the complainants therein specified; one undivided fourth part of the land in question (a), and which is the same land that had been purchased by the petitioner of the trustee as herein before mentioned. The petition further stated, that no part of the purchase money had been paid by the petitioner to the trustee, nor had any conveyance ever been made of the said land by the trustee to the petitioner. That by the before mentioned decree of the court of appeals, the title to the land is so essentially changed and altered—one-fourth of the whole being placed beyond the control of the said trustee, and it being out of his power to execute the deed, and fulfil the contract stipulated, that it would be ruinous, and of the greatest damage to the petitioner's interest, should he be called on to stand to the contract on his part, and to pay the purchase money expressed in his bond, when the other party thereto, (the trustee,) has it no longer in his power to give such title, and make such conveyance, as he in law was before bound to do. Even the payment of the purchase money at a *pro rata* calculation, would be ruinous, and tend to the great injury of the petitioner's interests; because the said premises could only be valuable to him, and he was only induced to purchase them because of their proximity to his own estate, and an important road and *right of way* leading from his estate through said premises, and connecting them together. *Prayer*, that the sale made by the trustee to the petitioner be vacated and wholly set aside, and the bond of the petitioner given up and cancelled, &c. The *answer* of the trustee, (the appellee in the first and appellant in the second of these appeals,) admitted that by a decree passed in the cause mentioned in the petition, he was appointed the trustee to sell the land therein mentioned; that he gave bond, and advertised the said land for sale, and on the 15th of November 1821, sold the same to the petitioner on the terms and for the sum stated in the petition, which

(a.) See 6 *Harr. & Johns.* 288.

the respondent, as trustee as aforesaid, reported to the chancellor on the 5th of December 1821; on the following day a conditional order of ratification was passed, and on the 12th of July 1822, the said sale was finally ratified and confirmed by the chancellor. The answer admitted the taking the petitioner's bond, with security, for the purchase money; and the time limited for the payment having elapsed, he instituted suits on the said bond against the petitioner, and his sureties, which are now depending. It also admitted, that at the time of the commencement of the suit in which the decree passed, under which the sale, and the purchase of the land was made as aforesaid, the suit mentioned in the petition was depending, in which the complainants therein claimed a conveyance of the *whole* of the land purchased by the petitioner, on the ground of an alleged contract of sale made by the ancestor of the defendants to the ancestor of the complainants; and that the petitioner was fully acquainted with the existence of the said suit at the time of the purchase made by him as aforesaid. The answer avers, that a short time before or after the said purchase, the petitioner, not being a solicitor of the said court, for a valuable consideration, contracted with the complainants in the last mentioned cause, to maintain them therein, and in pursuance thereof did actually manage the same, and conduct it to a final hearing in the court of appeals, by searching for testimony, examining witnesses, and employing solicitors, with compensations contingent upon the event of the said cause, so that the court of appeals at June term 1824, finally decreed, that the defendants in the said suit should convey to the complainants *one undivided fourth part only* of the said land. The answer further stated, that the petitioner had purchased from the said *Henry C. Drury*, and *Elizabeth* his wife, *Frederick Mills*, and *William Stallings* and *Achsah* his wife, all their interest in the said undivided one-fourth part of the said land, for a less sum of money than he would have to pay therefor, according to his purchase from the respondent as trustee, so that the only adverse claim now existing against the said land, is that of *Charlotte Johnson*, being the one-fourth part of the said undivided one-fourth part, or one-sixteenth of the whole; and the respondent verily believed, that he could obtain from

the said *Charlotte* and *John Johnson*, with whom she hath intermarried, and who reside in the state of *Kentucky*, a relinquishment of their interest in the said land, under an agreement to take in lieu thereof what would be their proportion of the purchase money due from the petitioner, provided he be allowed time for that purpose, and the petitioner interfere not to prevent it. That the respondent was willing that the petitioner be allowed at the rate of $28 20 per acre, it being the amount per acre of his purchase, for the one-fourth part of the land to which the respondent could not convey a good title; or that he be allowed at the same rate for such part of the said one-fourth part, as he had acquired a right to from *Henry C. Drury*, and others, before mentioned, and the respondent to procure for the petitioner a good title to the residue thereof, within a reasonable time; and in the meantime not to levy the amount due on the bond of the petitioner for the purchase money of the land. The answer further stated, that the respondent, when he sold the land to the petitioner he was in possession thereof, both as trustee and as agent for the said *William W.* and *Marmaduke Conner*, and *John Franklin*, and *Harriet* his wife, and *Sabritt Trott*, and *Nancy* his wife, and after the said sale, and the compliance of the petitioner with the terms thereof, the respondent, in performance of his duty as trustee, and also as agent of the said persons, gave the petitioner possession of the said land, and he had ever since continued in possession and enjoyed the rents and profits thereof; and that he had never paid to the respondent any part of the interest or principal of the said purchase money. That the court, whose purpose it is to do *complete* justice between the parties, should, if the sale is set aside, and the bond of the petitioner delivered up, require as conditions precedent, the redelivery of the possession of the land to the respondent, and the payment into court, or to the respondent, the interest due on the bond, or the rents, issues and profits of the land. The answer further stated, that inasmuch as the sale of the land by the respondent to the petitioner has been *finally* ratified and confirmed as before stated, the court could not set aside the same in a summary way on petition, but the petitioner must file an original bill. The answer further stated, that the respon-

dent knew of no such *important road*, or *right of way*, as the petitioner speaks of in his petition; and that he believed that the petitioner was induced to purchase the land, only because of its great fertility, and its adjoining his own farm, and that the said land, at a small expense, might be connected with the farm of another gentleman, who actually did bid for the same within a few cents as much as the petitioner.

Commissions issued, and much testimony was taken thereunder.

The defendant, (the trustee,) afterwards filed in the court of chancery copies of the following deeds of conveyance, viz. one from *Frederick Mills* to *John C. Weems*, dated the 25th of October 1824, for all his claim and interest of, in and to, one undivided fourth part of a tract of land called *Holloway's Neck*, or *Oliver's Preservation*, &c. and another from *Henry C. Drury*, and *Elizabeth* his wife, to the said *Weems*, dated the 25th of October 1824, for their claim and interest in and to one undivided fourth part of the said land, and also all their right and claim to one undivided fifth part of the residue of the said tract of land. Also a deed from *John H. Lamon*, and *Charlotte* his wife, (formerly *Charlotte Johnson*,) to *Nicholas Brewer*, junior, the said trustee, and defendant, dated the 17th of May 1826, for all their right, &c. in the said tract of land.

BLAND, Chancellor, (July term 1826.) The respondent objects, that this sale cannot be set aside in this summary way, but, that the purchaser should have proceeded by bill. If the case, in which this sale was decreed to be made, had been entirely closed, and was no longer depending, then it would have been, not only proper, but necessary to proceed by bill; by which all the former litigating parties, with the trustee who made the sale, if living, might be again brought into court, and have an opportunity of being heard to the extent of their respective interests. But, in the present instance, the parties are still here, and ready to sustain their interest. The matters in litigation, in this suit, having been determined, this property was decreed to be sold, and the proceeds brought in, that equity might be done among the parties. The most summary and

economical mode in which these objects can be accomplished is certainly most proper, and ought to be pursued.    Besides, the purchaser, whoever he may finally be determined to be, must make title under, and from the decree in this case; it is, therefore, obviously better, on his account, as well as for the parties in the suit, that all questions relative to the validity of the sale, should be concisely introduced into, and connected with that case from which he is to deduce his title.    These reasons appear to be sufficiently satisfactory to sustain the present mode of proceeding, even if there were no precedents to justify it; but, it has long been the practice under similar circumstances to proceed in this way by petition.    There is, therefore, no foundation for this objection to the mode in which this purchaser has brought his cause of complaint before this court.

In this case, no fraud has been alleged or pretended; nor is it charged by the petitioner, that there has been any misrepresentation, or mistake.    But it is alleged, and is proven and admitted, that the purchaser bought under an assurance of the trustee, that the title he sold should not be affected by a suit then depending, and which would be finally decided before the purchase money became due.    That the suit alluded to has been determined; and by which it has been decided, that the parties, whose interests the trustee sold, were entitled to no more than three-fourths of the tract sold.    And since the subject has been thus materially changed, the petitioner insists, that he ought not, any longer, to be held bound to fulfil the contract on his part.

It appears from the allegations and proofs, that this purchaser looked more to the title of what he bought, than to its quantity.    He bought by the acre; he was to pay for no more than the trustee had a right to convey; and he was not to pay for any, until he got a title.    He was willing to take the whole tract, if to be had; if not, as much as the trustee could convey.    But, the subsequent conduct of the purchaser has removed every doubt as to the present cause of complaint. Since this sale, he has, himself, purchased three-fourths of the one-fourth, the loss of which he alleges has so mutilated the subject as entirely to change its character, and divest it of all its value to him; thus, furnishing the most satisfactory evidence

of its having been his understanding and intention to purchase of the trustee the whole tract, or so much as he could get. This court, by its trustee, has sold, and can now convey to the purchaser three-fourths of this tract; to that extent this sale is a fair one, and must be sustained; and to that amount, therefore, the purchaser will be compelled to complete his purchase.

But it now appears that the outstanding title to the one-fourth of this tract of land, which was not covered by the decree, under which the sale was made, was held in four shares. That three of them have been conveyed to this purchaser, and that the other undivided fourth, of this fourth part, has been conveyed to, and is now vested in this trustee, for the express purpose of enabling him, for so much, and so far, to make a good title to this purchaser; and this trustee now insists, that the purchaser should be compelled to accept this title, to this portion, from him; to pay for it according to the terms of the sale; and that the persons who have thus conveyed to him their title, but, who are no parties to this suit, may be allowed to receive their proportion of the purchase money in lieu of their share thus conveyed through the trustee to the purchaser.

The chancellor has repeatedly declared, that where a sale is ordered by a decree of this court, as in this case, the parties to a contract made under such decree, are not the trustee and the purchaser, but *the court* and the purchaser. The trustee appointed to make the sale is the mere agent of the court—acting only as it authorises; and continuing only during its pleasure. This *court* is the party contracting with this purchaser. But even supposing for a moment, that the trustee is the contracting party; he is so in his *representative*, not in his *individual* character. In this case *John H. Lamon*, and wife, in whom was vested the right to the one-fourth of the one-fourth of the whole tract, have conveyed their title to *Nicholas Brewer*, junior, this trustee, for the purpose of enabling him to convey to this purchaser. Hence, it is evident, that if he were compelled to accept this portion, his title would be deduced from two distinct sources; for three-fourths he would claim under the decree of this court, and take the title of the parties to it; and for one-sixteenth he would claim under the deed of *Lamon* and wife to *Nicholas Brewer*, junior.

The case then resolves itself into this—*A* covenants, for a valuable consideration, to convey a tract of land to *B*, upon which *A* calls for a special performance; *B* objects, that there is an outstanding title in *C*, to which *A* replies, that *C* is ready and willing to convey his title to *B*. In such case, *B*, having contracted to receive a good title from *A*, certainly would not be compelled to receive a title from any one else; even although it might be as good as that which could be made to him by *A*. All the authorities show, that the good title must proceed altogether from him who covenanted to make it.

This purchaser, *John C. Weems*, bought of this court. He contracted to receive such title as the court could give him, from the parties to the suit in which the sale had been decreed, and none other. And this court will not force upon him any other title, than that which was declared by its decree should be sold. And, on the ground of there having been no fraud, misrepresentation, or mistake in this sale; and because of its appearing to be in all respects fair and correct, the purchaser will be now compelled to complete his purchase to the amount of three-fourths only of the tract sold to him; but he will not be compelled to take, and pay for the one-sixteenth offered to him through the trustee of this court, from *Lamon* and wife. *Ordered*, that the said sale, as reported, stand and remain fully ratified and confirmed to the amount of three-fourth parts of the tract of land, so as aforesaid sold. And to the amount of the said one-fourth thereof, according to the title of the same, as specified in the petition and proceedings, the said sale be vacated and annulled. *Ordered* also, that the petitioner be allowed the costs of his said petition, to be taxed by the register, and deducted from the amount of the purchase money wherewith he is chargeable.

From which order both the *petitioner* and *trustee* appealed to this court.

The cases were argued before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, and ARCHER, J.

*Speed*, for the Appellant, in the *first appeal*, contended, 1. The trustee made engagements at the sale not authorised by

the court, and the contract of the purchaser, being founded on them, is void.

2. It is entirely out of the trustee's power to comply with his engagements made at the time of the sale.

3. The proof shows, that the moving objects of the purchaser in making the purchase, were 1st. To acquire the control of a road leading through his own estate to the property purchased; 2d. To obtain the benefits of landings and fisheries belonging to the property purchased.

4. The proof in the case shows conclusively that the princi-ple objects of the purchaser in making the purchase have been entirely defeated by the inability of the trustee to make title to the whole of the property.

5. The purchaser bid for the land *as a whole,* or if he bid for it by the acre, he expected *to get the whole,* and thereby to acquire the great benefits before designated, and which he only could acquire, by getting *the whole* of the property.

To show that a purchaser may have his purchase rescinded, he cited *Glover v Smith,* 1 *Desauss.* 433. *Chambers v Griffiths,* 1 *Esp. Rep.* 150. *Sugd.* 206, 209. 1 *Madd. Ch.* 419, 430. *Stapylton v Scott,* 13 *Ves.* 426, 427. 2 *Pow. on Cont.* 11, 12, 14, 23, 143, 144. *Fran. Max.* 10, *s.* 7. *Manning and others* petition, Per *Johnson,* Chan. in 1824.

*Brewer,* jr. the Appellee in the *first,* and appellant in the *second appeal,* in person, contended, 1. That the purchaser will not be released from his purchase on account of the inability of the trustee to convey to him a good title to one-fourth of the land, a *pro rata* deduction from the purchase money being made, and that one-fourth not being more his object than any other part. If he be released, it must be on condition of his paying interest, or rents and profits, and surrendering posses-sion of the property purchased.

2. That the purchaser will not be released from his purchase, on account of the trustee not being able to convey to him a good title to one-sixteenth of the land, that being about ten acres in 159; the trustee being able to convey, under the de-cree, a good title to three-fourths of the whole, and the pur-chaser having already a good title to three-fourths of the other

one-fourth, (for which last three-fourths a *pro rata* deduction being made,) that one-sixteenth not being more his object than any other part.

3. That the trustee, at the time the decree was passed, could convey a title to the *whole of the land*, except what the purchaser himself had already a title to, derived from another source, and for that offers a *pro rata* compensation; and it is unimportant from whom the title is derived, *if it be good*.

4. That the purchaser will not be released, because he has not acted with good faith in buying up and prosecuting a title adverse to the title under the decree; and because his object does not appear to be fairly to get a good title, but by objections to get rid of the purchase.

5. The purchaser will not be released, because he has retained the possession of the property purchased, ever since the purchase, and has never offered to give up the possession, and pay the interest of the purchase money, or the rents and profits of the land.

6. That the chancellor erred in giving costs to the petitioner.

7. That all the parties to the suit in which the decree passed for the sale, and all others interested in the land sold, to wit, the heirs of *Frederick Mills*, to whom a conveyance was decreed of one-fourth, ought to have been made parties.

8. That the petitioner ought to have proceeded by original bill in this cause, and not by petition.

In his argument on the several points raised, he cited *Sugd.* 183, 187, 189, 190. *Evans v Bicknell*, 6 *Ves.* 175. *Drewe v Hanson, Ib.* 678. *Bromley v Holland*, 7 *Ves.* 27. *Langford v Pitt*, 2 *P. Wms.* 630. *Guest v Homfray*, 5 *Ves.* 818, 820. *Mortlock v Buller*, 10 *Ves.* 306. *Coffin v Cooper*, 14 *Ves.* 205. *Wakeman v The Dutchess of Rutland*, 3 *Ves.* 235. *Dorsey v Courtenay*, 3 *Harr. & Johns.* 483. *Abbott v Allen*, 2 *Johns. Ch. Rep.* 520. *Sugd.* 214. *Calcraft v Roebuck*, 1 *Ves.* jr. 224. 1 *Fonbl.* 24, 25.

*Magruder*, on the same side. He admitted that the chancellor had the power to set aside a sale where a proper foundation was laid, and where the court had been imposed upon. After the report of the sale had been ratified, the contract of

sale was complete, and except in the case of fraud, the sale is never set aside. *Scott v Nesbit,* 3 *Bro Ch. Rep.* 475. *Fergus v Gore,* 1 *Sch. & Lef.* 350. *Morice v The Bishop of Durham,* 11 *Ves.* 57. The persons who are interested in resisting the setting the sale aside must be made parties. *Matthews v Stubbs,* 2 *Bro. Ch. Rep.* 391, *(and note.) Wakeman v The Dutchess of Rutland,* 3 *Ves.* 235. In *England* the parties in the suit are the vendors, and they give the deed to the purchaser. It is not similar to the trustee here. The Master in Chancery there never conveys. He ascertains in whom the title is, which the court directs to be sold. The purchaser never pays the purchase money until all the persons claiming the title conveys to him. Here the parties do not convey— that is done by the trustee who makes the sale. The parties to the suit are the vendors, and the court and the trustee are the instruments of the law to enforce a sale, &c. It is not the contract of the chancellor with the purchaser. With consent of the parties a sale may be set aside—the trustee has no interest in the question. It is of no sort of consequence how the title is acquired, if a good one can be given to the purchaser. He has no right to object that there is not a good title, unless he pays the purchase money. *Brasher v Cortland,* 2 *Johns. Ch. Rep.* 505.

The allegations in the petition are not those to which the proof applies. The petitioner cannot rely on the depositions of witnesses, which relate to facts not put in issue by the petition. If there had been fraud in the sale, yet if not alleged in the petition, the petitioner could not take advantage of it. *James v M·Kernon,* 6 *Johns. Rep.* 543, 559. *Lyon v Tallmadge,* 14 *Johns. Rep.* 501.

*Taney,* (Attorney-General,) for the Appellant in the *first,* and Appellee in the *second appeal.* Where a *joint estate* is conveyed by husband and wife, the deed does not convey the *separate estate* of the husband in a part of the land so conveyed.

1. Will the court say that the purchaser is bound to take the three-fourths of the land which the trustee is enabled to convey, when he purchased the whole?

2. What effect will the purchase made by the petitioner of the one-fourth have upon the case? Was it in fraud of his purchase made of the trustee?

3. Is there any thing in the case, independently of the petitioner's having a title to one-fourth, to induce the court to compel him to abide by the purchase?

1. It was a purchase of the whole tract, and the trustee can convey only three-fourths of it. Is the purchaser compelled to take a title of undivided portions, when he purchased an entire estate? A purchaser will not be obliged to take an undivided estate, where he contracted for an entirety. *Sugd.* 214. The character of the estate must be that which was purchased. *Sugd.* 211, 212. *Drewe v Hanson*, 6 *Ves.* 678. *Poole v Shergold*, 1 *Cox*, 274. The entire estate was the whole inducement of the purchase made by the petitioner. The object was to get rid of the public road leading through his farm. Here will be various deeds of conveyance to make out the title, when it was the intention that one should answer.

2. Was there any thing in the conduct of the petitioner to vary the case, so as to compel him to take the three-fourths? Will his conduct be considered a fraud? It is not proved when he made the contract for the one-fourth. He purchased of *Mills* before the sale was made by the trustee. There is no evidence that he prosecuted the appeal referred to. He made a contract pending the appeal, and agreed to pay the costs. Was this such a proceeding as took away from him all equity on the present occasion? Suppose he did interfere, it could not alter the decision to be made by this court. It is not a case similar to those referred to on the other side from *Vesey* and *Johnson's* Reports, where the purchasers acted with bad faith.

3. The petitioner having now one-fourth of the land, and the trustee enabled to convey to him the three-fourths, is he bound to comply with his purchase? When is the title to be perfected? Is it at the time of the decree for a sale, or at the time of the sale, or when the deed is given by the trustee? Here the trustee was authorised to sell the land of which *Conner* died seized. He had no right to sell the title of any other person. He could act in no capacity, under that decree, but as trustee. He could not buy in a title from a person whose

title he was not authorised to sell, and compel the purchaser to take such title, whether it was considered as the contract of the parties, or of the court of chancery. The purchaser bought nothing more than the decree authorised the sale of. The court of chancery directed the sale of a clear title in the land ordered to be sold. There need be no covenants in the deed given by the trustee, because he sells under the decree a clear title—not merely the interest of the parties to the suit. The title derived by the trustee from *Lamon* and wife, does not come through the court of chancery The petitioner purchased under a sale directed by decree of the court of chancery, and not from the trustee in his private character, but in his character as trustee under that decree. *Achsah*, one of the heirs, was dead in 1826, but died after the deeds which were exhibited were executed; and there is no deed from her and her husband, of her right and interest in the land, so that there is an outstanding title to one-sixteenth part, which no one can give a title to. *Hepburn v Auld*, 5 *Cranch*, 262, 275. *Halsey v Grant*, 13 *Ves.* 78. *Staplyton v Scott*, Ib. 427. *Sugd. (new ed.)* 213. *Drewe v Hanson*, 6 *Ves.* 679. *King v Bardeau*, 6 *Johns. Ch. Rep.* 38, 43, 44. *Wirdman v Kent*, 1 *Bro. Ch. Rep.* 140, *(notes.)* But it has been said that a court of chancery sells only the rights of the parties in the same manner as sheriffs do under sales made by them under writs of *fieri facias*. This is not so, the court of chancery sells a clear good title. *Ogilvie v Foljambe*, 3 *Meriv.* 53. *Abel v Heathcote*, 2 *Ves. jr.* 100. *Staplyton v Scott*, 16 *Ves.* 272. *Biscoe v Perkins*, 1 *Ves. & Beam.* 493. *Sloper v Fish*, 2 *Ves. & Beam.* 145.

The possession of the purchaser was no waiver of title; and there could be no demand of the purchase money until the title was settled, under the agreement made at the time of the sale.

There can be no want of parties here, for this is a continuation of the case wherein the decree for a sale took place, and is a petition interposed, as is done in all other cases where all the parties are in court. *Sugd.* 45, 46, 47.

BUCHANAN, Ch. J. delivered the opinion of the Court. This is an application by a purchaser of land at a trustee's sale, to be

relieved from his contract on the ground of disappointment in the main object of his purchase.

There was no fraud, concealment, or intentional misrepresentation on the part of the trustee, but the sale appears to have been made in perfect good faith. The pendency of the suit in chancery by *Drury* and others for the same land, at the time of the sale, against *Conner* and others, was it appears, as well known to the petitioner, *John C. Weems*, as to *Brewer*, the trustee, and *Weems* purchased with a knowledge of that suit, the probable issue of which, neither had better means of knowing than the other. And the final decree of this court after the purchase by *Weems*, in favour of the complainants in that suit, for one undivided fourth part of the land which had been sold to him as an entirety, but in which a tenancy in common was thus created, however worthy of consideration it might have been in a different state of things, furnishes, we think, under all the circumstances of this case, no sufficient ground for his being discharged from his contract.

The land was not sold for a gross sum, at a stipulated number of acres, but was bid for and sold by the acre, and the deficiency in the quantity supposed to have been sold, produced by the subsequent decree in the suit then depending, is not complained of or alleged as a cause for annulling the sale; but the apprehended interruption or obstruction of a road, which is stated in the petition to lead from the estate of the petitioner through the premises intended to have been purchased, and which with the proximity of the two estates, is alleged to have been his only inducement to purchase, appears to be the only ground of complaint.

The existence of a road leading from the estate of the petitioner through the premises in question, which is alleged as an inducement to the purchase, is not made out in evidence. It does, however, appear in proof, that the possession of the disputed premises would furnish him with a convenient approach to a landing on the water for produce, which might have been an inducement to the purchase, and may be what was meant by the petitioner, though it is not so stated. And if so, any difficulties attending the enjoyment of such approach to the landing growing out of the decree of this court, directing a con-

veyance to *Drury*, and others, of an undivided fourth part of the land, would so far disappoint the object of the purchaser. It is proved also, but not alleged in the petition as an induce- ment to the purchase, or a ground for being relieved from it, that there is a road leading through the estate of the petition- er, to the land in question, which is injurious to that estate, and that there is no way of getting to it by land, except by going through that estate. That may be a great annoyance, but a discharge from the contract, if asked for on that ground, would not, in that respect, better the condition of the petitioner, as the road through his estate would still remain.

But on no ground does it seem to us that the petitioner has presented himself in an attitude before this court, which enti- tles him to be discharged from the entire purchase.

The sale was made in perfect good faith; and whether the inducement to the purchase was a convenient approach to the landing mentioned in the testimony, which might be better se- cured, by the possession and ownership of the entire estate, than of an undivided part; or whether his object was, to ac- quire by the purchase a control over the road leading to that land through his other possessions, it would seem not to be very material, whether the object was effected by a purchase of the entire interest from the trustee, or of an undivided part from him, and the residue from others having the right.

If, without the possession and ownership of the entirety, the main object of the purchaser would be disappointed, and it ap- peared that he could not procure the undivided fourth part de- creed to *Drury*, and others, a different case would be present- ed. But here the petitioner has bought up the rights of those interested in three-fourths of the undivided fourth part of the land decreed to *Drury*, and others, and the trustee is in a situ- ation to make him a title to the remaining fourth, or sixteenth part of the whole; so that he may, if he chooses, have title to the entire estate, and the whole object of the original purchase be gratified, with this only difference, that the title to the one undivided fourth part, would not be held under the decree, in virtue of which the sale was made by the trustee. And if the sale should be set aside, the evils which the purchase was in- tended to obviate, would return upon the petitioner. Which

shows it is not because the object of the purchase is defeated, that he wishes to be relieved from it, but that he seeks to be discharged from his contract, for some other reason not disclosed. And without seeing that the object of the purchase is defeated, and that the petitioner would be injured by the contract being enforced, he cannot be permitted to abandon it. If every minute and critical objection to a judicial sale was suffered to prevail, it would be attended with much inconvenience and embarrassment. A purchaser claiming to be discharged from his contract, should make out a fair and plain case for relief; and it is not every defect in the subject sold, or variation from the description, that will avail him. He will not be suffered to speculate at such sales, and if he happens to make a bad bargain, to turn round and abandon his purchase on some nice but immaterial objection. But if he gets substantially what he bargains for, he must take a compensation for the deficiency.

Chancery weighs the object and inducement of the purchaser, and looking to the merits and substantial justice of each particular case, if the sale be fair, relieves or not from the purchase, according as the character of the transaction, and circumstances may appear to require.

In this case, whether the gaining a convenient approach to the landing, or the control of the road leading through the estate of the petitioner, to the land sold, or both, formed the inducement to the purchase, it is evident, that the quantity of land, whether more or less to be obtained from the trustee, was not a material consideration. It is admitted, that the trustee can make a good title under the decree to three-fourths of the land sold; the petitioner has already secured to himself three-fourths of the remaining fourth part; and it appears, that the trustee is placed in a situation, by a deed from the party having the right, to give a title to the other fourth of that part, being one-sixteenth of the whole, which, (if the petitioner chooses to accept it,) will, with the three-fourths ready to be conveyed under the decree, give him title to the whole land, and secure to him the entire object of the purchase; and that being secured without loss to the petitioner, he cannot be discharged from his contract, when the enforcement of it, subject to a proportionate deduction for that which he has purchased from others, will

do him no injury. The main object of the purchase, as alleged, is of a character to render it unimportant from whom the title comes, if that object is gratified. And the attempt to get rid of the purchase, on the ground that the trustee can only make him a title under the decree, to three undivided fourth parts of the land, when he supposed he was buying the entirety, has an unfavourable aspect; seeing, that having purchased from others, three-fourths of the other undivided fourth, and the trustee being in a situation to make him a title to the residue, he may have the entire estate in the whole land, which he alleges it was his purpose to have obtained.

Besides, it does not appear when it was that the petitioner contracted for the undivided interest of some of the complainants in the suit depending at the time of the sale. If before the sale, it seems clear, that he was willing, and intended to obtain from the trustee, any portion he might be able to make title to; and if after the sale, his intermeddling as he did, and purchasing up three-fourths of the undivided fourth decreed to *Drury*, and others, might, if this sale was set aside, have the effect to embarrass, and throw difficulties in the way of an advantageous resale, to the prejudice of those concerned in the proceeds, whose interests ought to be protected, when it can be done, as we think, without injustice or injury to the petitioner.

ORDER AFFIRMED.