# Leonard Marbury *vs.* Nicholas Stonestreet.

A purchaser, at the sale by a trustee appointed by a court of equity, alleges, that the land bought by him, contains a much smaller number of acres than the trustee stated that it did.  If such appears to be the fact, he is entitled to relief.

In the absence of proof to the contrary, quantity must be regarded as a material consideration with the vendee.  The qualities of the estate, however, may be important in ascertaining the allowance for deficiency.  Other considerations, except the mere value of the soil, are often highly estimated in the purchase of land, and are to be regarded in making compensation for deficiency.

Although the sale be not impeached for fraud, no original bill will lie.  If, however, the deficiency be known before ratification, the vendee should proceed by petition.

This case is brought by appeal from Charles county court, sitting as a court of equity.  The bill was filed on the 6th February 1849, by appellant, who had purchased a tract of land sold by the appellee, as trustee of that court for the sale of the real estate of James B. Pye.  It alleges, that the trus-

tee, in his advertisement, stated, that the tract contained, by survey, six hundred and sixty-four acres. For this the purchaser was to pay $1000 in cash, the remainder in three equal annual instalments, bearing interest from January 1st, 1846.

Confiding in the statement as to quantity, the complainant purchased at $6000, of which he paid $3000, on 24th October 1845. A survey has since been made, and the tract contains only five hundred and thirty and-a-quarter acres.

On the 16th May 1848, he requested the defendant to abate *pro rata* for the deficiency. This he refused to do, and has instituted suits upon the bonds given for the purchase money.

The complainant prays a decree for abatement, and for general relief.

The trustee states in his answer, that the sale was not made by the acre, but *in solido,* for $6000; that the widow of the deceased, (James B. Pye,) whose estate was sold for the payment of his debts, has received the whole of her share and removed from the State; and that the other parties have also received their portions, so far as funds have come into the hands of the trustee, all of which was done under the order of the court. He denies, that as trustee he directed a survey, but admits that he requested the surveyor to run it, looking to complainant for payment. The survey was not made till April 1848, before which time the trustee's report had been ratified, and the widow had been paid her full proportion by the defendant, and has removed to Louisiana; the balance has been distributed under order of the court. The complainant took possession of the land, and was pleased with it.

An injunction was obtained by the complainant, and the money brought into court has been paid over to trustee by order of the court.

A commission was issued, and under it proof was taken of a tender of money by the complainant, and of the survey and the deficiency.

The bill was dismissed 7th April 1850.

The case was argued before all the judges.

By *Causin* and *May* for the appellant, and *Stone* and *McLean* for the appellee.

*Causin.* Advertisement of sale says the number of acres by survey is eight hundred and sixty-four. This the trustee's advertisement guarantees.

Application for a reduction, because of the deficiency, was made before the notes became due.

This case is not at all like *Brown and Wallis*, 4 *G. & J.*, 508. There the application was six years after the sale.

No injury will be done to the trustee. There is yet money enough undisposed of.

When the widow was paid, only $1000 had been received, and if he paid her in full, it was in his own wrong.

There is in the record no proof of an audit; no proof that the widow has gone away, the answer in these respects not being responsive to the bill. 1 *H. & G.*, 81. 3 *Gill*, 408. 11 *G. & J.*, 10.

The court said, while the fund is in court, the sale may be vacated and the purchase money restored.

2 *H. & G.*, 176. Where there is fraud, or an express warranty, an executor or trustee may be held liable, but is not liable on an implied warranty.

The chancery court is the vendor. 2 *Bland*, 641, 644, 646. When there is a misstatement, it matters not whether it be by design or mistake. 1 *Story*, secs. 193, 195. 1 *Story Rep.*, 188, 196. 17 *Vez.*, 398. 2 *Hen. and Munf.*, 165, 173. "More or less," is intended to cover small deficiences only. See also 4 *Mass. Rep.*, 414, 416. 2 *H. & G.*, 350.

It is said that relief ought to have been sought in the original cause by petition. The answer is, we were sued at law, and had a right to file a bill for injunction. See 5 *Gill*, 277. 1 *Story's Equity*, sec. 195.

*Stone* for appellee:

Referred to 4 *G. & J.*, *Brown vs. Wallis*. In this case relief was refused in chancery, because the land was sold in

gross. The Court of Appeals differed with the chancellor in his fact, not in his law.

See *Story's Eq. Pleader*, sec. 27. *Mitford*, 47, in *note*. 4 *Mass. Rep.*, 422.

No case authorises an allowance by way of abatement, unless the sale is by the acre.

The answer is responsive to the bill.

4 *Mass. Rep.*, 418. 1 *Maddox*, 415. 4 *Vez.*, 689. 5 *Vez.*, 720. That time is important: 5 *Cranch*, 279. *Hepburn and Auld.* Judge Livingston says, that what would be a reasonable time in England, would be an unreasonable time here. Prices vary so much in this country.

If the land had contained one hundred acres more than the amount stated, could the trustee claim for excess?

1 *Md. Ch. Decisions*, 239, *Goldsborough vs. Ringgold.* 1 *Md. Ch. Decisions*, 499.

There are fisheries on this estate. How is the deficiency to be regulated in regard to them?

Courts of equity will rather rescind a contract than change it. They are not fond of making new contracts. 15 *Eng. Ch. Rep.*, 748, *Thomas vs. Berry.*

*McLean*, on the same side.

How is the trustee to be treated? Is he liable *personally*? If so the trust fund is not liable.

No fraud is charged to make the appellee liable personally.

1 *Maryland Decisions*, 332. A sale, even where there was no written memorandum of sale, was ratified a long time after it was made.

The injury which parties may sustain by delay makes time *essential.* If the trustee has paid away the money, can he get it back? This court does not know who are the claimants, or how many there are.

See 1*st Story's Reports*, 192.

If the party here is liable personally, he is liable for damages in a suit at law.

In England, and in Henning and Murford where the words

more or less are used, allowance has been made for a defi-ciency, but in the case of *Stull. vs. Hurtt.*, in our chancery court at June term 1851, an allowance was not made, even for a defi-ciency of one-sixth. See also 2 *Gill*, 128, *Jones vs. Plater*, 8 *Cranch*, 371. 2 *John. Rep.*, 40. 15 *John. Rep.*, 472. 5 *Mass.*, 355.

If there be in this case the deficiency which is alleged, time is of great importance; the party ought to have objected to the sales, or after ratification filed a petition. 15 *Eng. Chan. Rep.*, *Thomas vs. Derring.* 1 *Vez. and Beame.*, 378. 11 *G. & J.*, 10.

While the fund is in court relief may be granted.

The fisheries will render an abatement very difficult.

There is no proper proof as to deficiency, the survey was not made by the patent; but, except as to one line, by the holdings.

*May* for appellant.

As to mistake in contract: 1 *Story's Rep.*, 189. 5 *Gill*, 222. 1 *Maryland Chan. Decisions*, 499.

It was the trustees duty to have the land surveyed. Good faith is to be observed in all contracts, mistake is construc-tive fraud. 13 *Peters' Rep.*, 36, *Smith vs. Richards.* 3 *H. & McH.*, 220. 2 *H. & G.*, 176, 346, 350, 395, 698. 4 *G. & J.*, 480. 11 *G. & J.*, 9, 10. 5 *Cranch*, 278. 3 *Cranch*, 281. 2 *Gill*, 127.

The appellee contends, that if any relief is given, the con-tract should be rescinded. There was a mistake, and it should be corrected only *pro tanto*, unless the inducement to buy should fail through the mistake. See 2 *H. & G.*, 358, *An-derson vs. Foulk.* 9 *Cranch*, 494.

Is it too late to obtain relief either because of laches or be-cause of distribution?

As to laches: Purchase money not all of it payable until August 1848, and bill filed February 1849.

Time is always computed from the discovery of a matter. 2 *Maryland Ch. Decisions*, 501.

As to distribution: The only evidence of it, is in the defendant's, answer, and that is not responsive to the bill. The widow was not entitled to more than her share of the money received.

Is the proceeding by original bill proper? It has never been decided in Maryland, that an original bill is not the proper remedy. I never knew an injunction upon a petition.

No such objection was made in the court below. See 12 *G. & J.*, 16. 3 *H. & McH.*, 220. 2 *H. & G.*, 358, 359. 5 *Gill*, 274, 277. Act of 1832, ch. 302, sec. 6. 12 *G. & J.*, 82, 83. 12 *G. & J.*, 16. New parties may be made.

Tuck J., delivered the opinion of the court.

It appears by the opinion filed in this cause, that the proceedings in the case, for the sale of James B. Pye's estate, were before the court below when this decree was pronounced. They however form no part of the record, and cannot be treated by us as in the case, except so far as they are admitted by the pleadings. The record being defective in this and other respects, the case will be remanded for further proceedings, according to the views of this court. 11 *Gill and John.*, 342.

We agree with the court below, as to the character of the representation contained in the notice of sale. Where land is sold in gross, for a sum certain, upon a statement of the number of acres, quantity must be regarded as a material consideration with the vendee. If there be other inducements to the purchase, they should be shewn. We are not to suppose that a person will give as much for 530 acres of land, as he would pay for 669, of the same quality. This property was advertised as "containing, by survey, 669 acres," There was no qualifying expression, such as more or less, by estimation, &c., to intimate to the public that a positive declaration as to quantity was not intended. On the contrary, the particularity of the number, and the words, by survey, indicated that the contents had been ascertained by the most accurate method. The authorities shew, that the exhibition of a plat is equivalent to an averment of the quantity of land.

Marbury *vs.* Stonestreet.

And we find that relief has been granted, where the deficiency was much less than in the present instance. It is difficult to understand why this statement was made at all, except that the trustee, believing that the land comprised that number of acres, designed to offer the quantity as an inducement to purchasers. It was more than a mere description of the property. If this sale had been made by the appellee, in his own right, relief could not be refused. In the case of *Hill vs. Burkley*, 17 *Ves.*, 401, it is said, "when a misrepresentation is made as to the quantity, though innocently, the right of the purchaser is to have what the vendor can give, with an abatement out of the purchase money, for so much as the quantity falls short of the representation. That is the rule generally, for although the land is not bought or sold professedly by the acre, the presumption is, that in fixing the price regard was had by both parties, to the quantity which both supposed the estate to consist of. The demand of the vendor and the offer of the purchaser, are supposed to be influenced in an equal degree, by the quantity which both believe to be the subject of their bargain. Therefore a ratable abatement of price, will probably leave both parties in nearly the same relative situation, in which they would have stood, if the true quantity had been originally known." This doctrine is recognized, and approved by Judge Story, in 4 *Mason*, 417. We are aware of no reason why the same principle should not be applied to sales made by a court, whose duty it is to protect those who deal with it in good faith. In such cases, equity is done by making compensation out of the unpaid purchase money. 2 *Har. and Gill*, 350, 358. It makes no difference whether the party making the statement, knew it to be false or not, provided it be of something forming a material inducement to the purchase, and by which the other party was misled to his injury. "The gist of the enquiry is, not whether the party making the statement knew it to be false, but whether the statement, made as true, was believed to be true, and therefore, if false, deceived the party to whom it was made." 6 *Gill and John.*, 58. 1 *Md. Chan. Dec.*, 498. 1 *Story*, 195.

v. 1

The counsel for the appellee contend, that there is no rule by which this equity can be adjusted in the present case, because there were marl, timber, and fisheries, with a view to which the purchase may have been made. There is no proof of their value, nor that they formed any inducement with the appellant in making the purchase. That is part of the appellee's case, and should be made out by him. Such qualities of an estate, may be important in ascertaining the deficiency to be allowed. The purchaser is not always entitled to a ratable deduction per acre. Other considerations besides the mere value of the soil, are often highly estimated in purchases of land, and are proper to be regarded in making compensation, in cases of this kind. This right is not without an equivalent to the vendor, for if the vendee gets substantially that for which he bargains, equity will compel him to take an allowance for deficiency. Consequently all circumstances that give value to the property, must be taken into the account. *Battee on Contracts,* 67 *L. L.,* 85. 10 *Ves.,* 506. 17 *Ves.,* 402.

Various objections have been urged, with much force, on the part of the appellee, to the form of the proceedings, want of parties and of proofs, which it is necessary to consider. It is said that the appellant should have sought his relief by a different form of proceeding, and that an original bill will not lie in a case like the present, unless the sale be impeached for fraud. We have not been referred to any case in which it is said that a purchaser cannot, after ratification and enrolment of the order, claim a deduction for so much as the land falls short in quantity, by original bill or petition. If the deficiency be known before the ratification, the party should proceed by petition, and there are circumstances under which a bill of review would be necessary. The practice, however, has not been uniform, as a notice of the cases will shew.

In *Weems vs. Brewer,* 2 *H. & G.,* 390, a purchaser filed his petition, more than two years after the final confirmation, and after he had passed his bonds to the trustee, in compliance with the terms of sale, asking to be discharged from his con-

tract, on the ground of recently discovered equities, affecting the title. It was objected that he should have proceeded by original bill; but the late chancellor said that "there were many precedents, and that it had long been the practice to proceed by petition." In *Brown vs. Wallace,* 4 *Gill and John.,* 483, it appears, from the chancellor's statement of the case, that William Cole, one of the purchasers, sometime after the confirmation of the sale, was allowed, on petition, a deduction for deficiency in the lot purchased by him. The Court of Appeals did not revise the chancellor's opinion in *Weems vs. Brewer,* on this point of practice, but affirmed his decree on the merits. And the sale to *Cole* was not before that court, on the appeal in *Brown and Wallace.* They are entitled to respect, however, as precedents in chancery, because of the learning that distinguished the late chancellor in all matters affecting the history and practice of his court. In *Ridgley vs. McLaughlin,* 3 *Har. and McH.,* 220, a bill was filed by a purchaser in chancery, to vacate the sale, on the ground that the defendants, the alleged owners of the land, had no title thereto; and relief was granted, although the sale had been ratified, and there was no allegation of fraud. But in *Hollingsworth vs. McDonald,* 2 *H. & J.,* 230, a bill of review was held to be necessary. Certain property said to belong to Thomas Parkin, had been sold to pay his debts, under a decree in a cause in which Hollingsworth and wife were defendants. After the ratification it was discovered, as was alleged, that the estate was not the property of Parkin, but belonged to Mrs. Hollingsworth, (one of the defendants in the original suit, and a complainant in the case now referred to,) and they sought to vacate the sale. The court said that they should have proceeded by bill of review, or original bill, charging fraud, *to set aside the original decree.* The validity of the sale depending on the correctness of the decree, it was necessary to examine into its merits, and in that way get rid of the sale. We have also been referred to the case of *Jay and Mason vs. Pinkney,* 12 *Gill and John.,* 69. There one of the defendants—not a purchaser—sought to set aside the decree,

and the court held, that for that purpose, an original bill was never appropriate, except when the decree is impeached for fraud. It is to be observed, that in these cases the purchaser was not asking to be relieved against his contract, but the party defendant to the original cause was seeking relief against the decree; not because of any infirmity in the sale, but on account of error in the decree itself. The case of *Frize vs. Glenn and Stewart*, is not in point. The complainant filed an original bill against trustees in chancery, to recover a distributive share of the proceeds of sale in another cause. The chancellor intimated that the regular course to enforce the order ratifying the distribution, was by petition in the case in which the audit was made, in which we fully concur.

There is also a class of cases somewhat analagous to the present enquiry, in which the same want of uniformity is observable, viz: applications to vacate the enrollment of decrees, which is to set aside the decree. In *Burch vs. Scott*, 1 *Gill and John.*, 393, a bill was filed for this purpose, but in *Oliver vs. Palmer and Hamilton*, 11 *Gill and John.*, 143, relief was granted on petition.

From these cases it appears, that there has been no settled practice on these subjects. If the decree which authorises the sale, and lies at the foundation of the purchaser's title, may be vacated by original bill, or by a more summary proceeding, on the ground of surprise or mistake, it seems difficult to assign a satisfactory reason for not permitting a sale to be enquired into, in the same manner, for the same or similar causes. It is ascribing to the order confirming the sale, a higher dignity than to the very decree under which the trustee makes the sale. And to apply this reasoning to the present case, it may be said, that the inconsistency is more manifest when the vendee, instead of setting aside the sale, only asks that he may not be required to pay for more than he gets.

In such a case the purchaser does not ask that he may be discharged from complying with his contract. He claims an equity, growing out of a subsisting agreement, that the court with which he has dealt, cannot perform. The authorities

say, that it is his equity to have what the vendor can give, and compensation, by way of deduction, for the deficiency. The weight of argument is clearly on the side of the more convenient and summary proceeding. The trustee and parties in interest, are all before the court; the fund is undisposed of, and under its control; the purchaser is to take his title under that cause; and if creditors are interested, it might be necessary to make numerous defendants to a bill, whereas they could be easily affected with notice by petition.

This seems to have been the practice in cases where the sale had been finally confirmed, but the proceeds not yet audited, and the accounts ratified. And hence in *Weems vs. Brewer*, (where the fund had not been audited,) the chancellor said: "If the case in which this sale was decreed to be made, had been entirely closed, and was no longer depending, then it would have been not only proper, but necessary, to proceed by bill; by which all the former litigating parties, with the trustee, if alive, might be again brought into court, and have an opportunity of being heard to the extent of their respective interests." But in *Brown vs. Wallace*, 4 *Gill & John.*, 483, (where the auditor's account had been confirmed, and the term passed,) an original bill was entertained by the chancellor and Court of Appeals. It will appear that that case is in most respects a precedent for this.

Wallace had been appointed trustee in chancery, to make sale of one Mitchell's estate; Brown purchased part of the property; passed his bonds according to the terms of sale; the sale was ratified; and the auditor's report, distributing the fund, also confirmed; the bonds were put in suit, and judgments obtained against the purchaser and his sureties, who filed original bills on the equity side of Harford county court, against the trustee alone, praying that the sale might be vacated as to part thereof, for reasons assigned, and as to another part, claiming a deduction for deficiency. Injunctions were granted and the cases afterwards removed to the chancery court. If it be assumed, as urged by the counsel for the appellee, that the auditor's accounts in this case have

been stated and confirmed, the only material difference between the two cases will be found in the fact, that Brown's bill was not filed in the same court in which the original decree was passed. It does not appear that any suggestion was made or point raised by the counsel, the chancellor or the Court of Appeals, as to the necessity or propriety of a bill of review, or of an original bill charging fraud in the sale. In both courts the merits of the case were fully examined, and passed upon; and the only objection taken, as to the form of proceeding, was, that the remedy should have been sought in the chancery court, and that the parties in interest were not made defendants. The Court of Appeals, in disposing of the objections as to the character in which Wallace made the sale, and his excess of authority, said "the final ratification of the sale was conclusive upon the purchaser, *as to these questions.*" But, in reference to his claim for deficiency, they use this language; shewing that they distinguished between an application to vacate a sale, and one to obtain compensation, as in the present case. "If he, Brown, was in a situation to enquire into it, (had filed his bill in time,) and could prove the deficiency, it would have been allowed him." The confirmation of the sale, it appears, would have interposed no obstacle to his claim for abatement, if he had not delayed his application for an unreasonable time, and could have proved that the land contained less than he bought.

When the sale has been finally ratified, the fund distributed by an audit and confirmation, and the term passed, a bill, either original or of review, is required, because these proceedings ascertain and determine the rights of the persons interested in the proceeds of sale. The suit is then considered as closed, and such proceedings must be resorted to as will bring the parties again before the court. This the chancellor, in *Weems vs. Brewer*, said, a petition would not accomplish; but in *Brown vs. Wallace*, an original bill was not objected to, as inappropriate for the purpose.

The last case on this subject, and one much relied upon

by the appellee's counsel, is *Tomlinson vs. McKaig*, 5 *Gill*, 256. The court decided, that before ratification, all objections are open for consideration. "But after the sale has been confirmed, and after the term has passed and the proceedings are considered as enrolled, the court possesses no power over the *decree* to annul the *same*, except by bill of review, for error apparent on the face of the *decree*, or for some new matter discovered since the *decree*, or by an original bill to *annul* the *same* for fraud." The objection was made, in that case, as well to the decree under which the sale was made, as to the sale itself; not by the purchaser, but by the defendants in the original cause, against whom and the trustee, the purchaser was enforcing the contract of sale. As regards decrees, the court were but announcing the well established doctrine. But if that opinion is to be considered as applying to purchasers relying upon an equity, such as is sought to be enforced by the appellant, the same rules of practice that would be enforced on an application to annul the decree, it cannot be denied that the cases in which a different mode of proceeding has been allowed must be considered as overruled. And the appellee's counsel, placing this construction on the opinion of the court, have insisted, that on its authority, this decree must be affirmed; because this is neither a petition, a bill of review, nor an original bill charging fraud. If we give this interpretation to the decision, (on which it is unnecessary to express an opinion,) we cannot resist the suggestion of the appellant's counsel, that the case should be remanded under the act of 1832, ch. 302.

We have seen that the right to relief in cases like the present, does not depend on a knowledge by the party making a misstatement, of its want of truth. It depends on its being untrue, and on the effect it may have had on the conduct and interests of the other party. The appellant avers, that he made this purchase upon a misrepresentation of the trustee, in which he confided, and by which he was misled to his injury. It would be difficult for a party making a purchase to shew his intentions, and the considerations that influenced him,

except by his own declarations, which are not often received, when offered by himself. But the circumstances shew, as we think, that the purchase was made, in a great degree, with reference to the quantity of land, and there is proof of a considerable deficiency, though not sufficiently accurate for a final decree. It is said that there is no allegation of fraud in this bill. This is true, and we may go further and say, that there is nothing in the record from which any fraudulent purpose can be inferred or imputed to the appellee. He, doubtless, had in his possession information which, in his judgment, warranted the statement he made. But, as far as appears to us, the parties did not treat on equal terms; and if the vendee, having no means at the time of verifying the notice of sale, made the purchase in confidence of its truth, we cannot see the justice of casting the loss on him, in the absence of proof of default on his part. For although much must depend on the general justice of the case, upon consideration of all the facts and circumstances attending the application, and it may happen that the complainant cannot proceed, yet, we think, he was entitled to have his claim considered. The case does not belong to that class which are treated "as evil acts with evil intents." It does not involve any question of motive. But "if a party innocently makes a misrepresentation of a material fact, by mistake, it is equally conclusive, for it operates as a surprise and imposition upon the other party. This relief results from the principle, that a man who makes a misrepresentation, without knowing it to be true, or taking means to inform himself, will be held to make good the contract which this statement has caused another, equally innocent, to enter into with him. There are many cases where recoveries have been had on this ground, and it is now a well recognized doctrine of fraud." 1 *Story Eq.*, 192, 193. If, therefore, the case can be brought, by pleadings and proofs, within this principle, we think the appellant is entitled to have the record remanded.

It has also been objected, that the bill has been so long delayed, that the parties cannot be placed *in statu quo.* If

Marbury *vs.* Stonestreet.

it were an application to vacate the sale altogether, we might say that it does not sufficiently appear whether this will be the result or not. Lapse of time is certainly important to be considered, and especially where the condition of the parties interested, and the value of the property, have undergone material change. But this objection does not always prevent relief where the purchaser offers to perform his contract, subject to an abatement, though it sometimes has that effect. For in adjusting the equities between the parties, consequences arising from delay should receive due weight, as it is upon the whole case, that the court is to determine whether, and to what extent, relief should be granted. It should be remembered that the trustee was informed of this deficiency, while a large portion of the purchase money was in the hands of the vendee, before it was due, according to the terms of sale, and when the parties entitled to receive it, had been subjected to no more delay than the contract of sale warranted. When one party to a contract makes a representation, on which the other relies, it is not *laches* in him not to proceed immediately to verify that statement. *Partridge vs. Usborne*, 5 *Russ.*, 195.

It cannot affect the equity of the case, whether the money belongs to the heirs or the creditors of Pye. In either case they cannot rightfully claim more than he owned; and if they obtain that, at its fair value, no injustice will be done them. If he were alive, and had sold this land upon a similar representation, he would be subject to the same rule of equity. Why should those claiming under him expect to occupy a more favorable standing in court?

In allowing this claim of the appellant, the court will protect the interest of others. If the trustee has made disbursements under the direction of the court, the appellant cannot complain if he does not receive compensation in full. This will have been the result of delay in his application, and the consequence must fall on himself.

It is immaterial whether the survey was made with the concurrence of the trustee or not. He had no authority to

Marbury *vs.* Stonestreet.

bind the parties by any such voluntary proceeding. It should have been made under the order of court. And besides, if it be in all other respects correct, we could not sanction it, without disregarding the act of 1811, ch. 90, which requires the assistants to be sworn white men.

The proceedings and parties in the original cause (and the creditors, if the auditor's account has been confirmed,) should have been brought into this record, so as to have had all the facts and persons interested, before the court. It would be manifestly improper to act finally in the case, without affording them an opportunity of defending their rights against the claim of the appellant.

Considering the imperfect state of this record, and that there is no evidence before us of the condition of the original cause at the time this bill was filed, we have expressed our opinion more fully than might otherwise have been necessary, for the direction of the parties in the further prosecution of the cause. And believing that the purposes of justice require it, we shall remand the cause under the act of Assembly. The appellant can then proceed with the present case, or commence *de novo*, as he may be advised. The injunction heretofore granted and dissolved, should be reinstated, until the case is finally disposed of.

ECCLESTON, J., delivered the following dissenting opinion.

If the appellant is entitled to relief, I think it must be upon the ground of mistake, and not of fraud. Neither the averments in the bill nor the proof, present a question of fraud, either actual or legal, on the part of the trustee, but purely a mistake, in my opinion. If so, the party should have sought redress by a proceeding in the former cause, in which the sale was made, and not by an original bill. In *Pinkney vs. Jay and Mason*, 12 *G. & J.*, 83, the doctrine is clearly announced, that an original bill is never proper to impeach a decree, except on the ground of fraud. And in *Tomlinson vs. McKaig*, 5 *Gill*, 277, the Court of Appeals say, "before ratification, the sale must appear to be in all respects fair and proper, or

it cannot receive the sanction of the court. But it is equally true, that after the sale has been confirmed, and after the term had passed, the proceedings are considered as enrolled, the court possesses no power over its decree to annul the same, except by bill of review for error apparant on the face of the decree, or for some new matter discovered since the decree, or by an original bill to annul the same for fraud.

Final orders ratifying sales and auditor's reports, in which the rights of parties are settled, are treated and considered in chancery proceedings as equivalent to decrees, technically such, and I see no reason why these orders can be impeached by any other mode than decrees can. Indeed the language of Judge Archer in *Tomlinson vs. McKaig*, seems quite as applicable, in its immediate allusion to an order ratifying a sale, as to a decree, if not more so. Be this as it may, the reasoning in regard to decrees is equally applicable to orders of this sort. They are technically called *decretal orders.* I therefore cannot concur with my brethren in their views in regard to this case.

LE GRAND, C. J., and MASON, J., agreed with TUCK, J.

*Case remanded.*