PATRICK CARMODY vs. MARY BROOKS and ROBERT BROOKS, Administrators of RICHARD BROOKS, deceased.

*Vendor acting in good faith, required to make a Proportional Abatement in the Purchase money, for a Deficiency in the lot of ground sold, and the Sale ratified.*

The appellees, as administrators, sold under an order of the Orphans' Court, to the appellant, certain leasehold property, which was described in the advertisement by which the sale was made, as "a lot of ground fronting on Addison street, fifty feet, with an even depth of one hundred and twenty-three feet, improved by three two story brick houses, each with a front of twelve and a half feet, also a two story brick stable, twenty-five by fifty feet, together with three frame stables." After the sale, which was reported to, and ratified by, the Orphans' Court, the purchaser discovered that while the lot had a front of fifty feet on Addison street, and was a hundred and twenty-three feet deep, it was only forty feet wide in the rear, thus leaving on one side a small wedge-shaped deficiency; he thereupon applied to the Court for a rescission of the sale upon the ground, among others, of this deficiency, as being a material variance as to size and character, between the lot as represented, and as existing by actual measurement. None of the buildings were on the deficiency, and the purchaser was on the premises, and examined, or had an opportunity of examining them before he purchased. The Court allowed a proportionate abatement from the purchase money for the deficiency, but refused to rescind the sale. On appeal by the purchaser, this action of the Court was affirmed.

APPEAL from the Orphans' Court of Baltimore City.

This was an appeal from an order of the Orphans' Court, passed on the 16th of December, 1873, ratifying a sale of certain leasehold property on Addison street, in the City of Baltimore, made under an order of said Court, by the appellees, as administrators of Richard Brooks, deceased, to the appellant, and directing the appellees to

allow the purchaser an abatement of one hundred dollars from the purchase money for a deficiency found to exist after the sale, in the size of the property purchased. The case is further stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, MILLER and ALVEY, J.

*Michael A. Mullin,* for the appellant.

The deficiency in the width of the lot is admitted, and is sufficient to justify a rescission of the sale; and the purchaser is not bound to resort to his claim for compensation. *Chitty on Contracts,* 268; *Foley vs. Crow,* 37 *Md.,* 51. The proof shows that "the thing sold is unfit for the use intended, and not within the inducement to the purchase."

There is a defect in the title, in that the deeds offered in evidence and under which the intestate of the administrators claimed to hold the property, cannot be located. See *Neel vs. Hughes,* 10 *G. & J.,* 7. The description in the deeds is void for uncertainty. No landmark is mentioned to distinguish the ground, except the north or north-west side of Addison street; but at what portion of the north or north-west side of Addison street does either lot begin or terminate? In one of the deeds reference is made to "a plat recorded by Eleanor Addison Smith," and in the other to "a plat filed in Baltimore County Court by a certain Eleanor Addison." If no such plat can be found this case is clearly within the law laid down in the leading case of *Hammond vs. Norris,* 2 *H. & J.,* 130. Diligent search was made for the plat, and it is not now of record, and every presumption must be that it never was of record.

The appellees, to supply the defect in the deeds, produced a witness, Mr. Bouldin, a surveyor, who testified that there was no difficulty in ascertaining the location of

the lots; and he produced a plat of Baltimore town, east of Jones' Falls. Is the defect in the deeds cured by the production of this plat? Is this the plat or one of the plats referred to in the deeds as recorded in Baltimore County Court?

Certainly there is no direct evidence to that effect, and nothing in the source from which the paper is produced to justify such a presumption, or admit it as evidence before a jury. *Lygon vs. Strutt*, 2 *Anstr.*, 601; *Swinnerton vs. Marquis of Stafford*, 3 *Taunt.*, 91; *Hammond, et al. vs. Bradstreet*, 10 *Exch.*, 390; *Peake's Nisi Prius*, 18.

The vendors should tender to the purchaser not merely such a title as would justify a verdict from a jury, but one that might reasonably be considered without a doubt or a cloud.

There is no evidence that the plat referred to ever existed. There is no such plat among the records of Baltimore County Court, nor is there anything to indicate that such had ever been there. It cannot be presumed to have been recorded and lost, for the records still exist of which it should form a part. Besides its recording would be an official act, and the presumptions sometimes made of the existence of deeds not matters of record, cannot be extended to cover the case. For the same reason, the reference in the deeds is no proof of the existence of the plat. Its absence from the records would rather show that no such plat ever existed. *Weatherhead's Lessee vs. Baskerville*, 11 *How.*, 360; *Smith vs. Wilson*, 17 *Md.*, 469; *Candler vs. Fisher and Wife*, 11 *Md.*, 338–9.

Nor does the appearance of the plat tend to prove its identity with the plat, or one of the plats referred to. Although old, it has not such an air of age as might be expected from an instrument ninety years old. There is no endorsement on it of the clerk of the court, as usual in papers made of record and afterwards delivered to the owner. There is no proof of the handwriting of the sur-

veyor. The word "signed" before the signature appears to be in the same handwriting as the signature itself, and would hardly be found in an original paper.

There is no evidence to show that Eleanor Addison or Eleanor Addison Smith ever owned the ground in question. And although she may have owned it, and although the plat exhibited may be a plat made by her and representing the property, it could not bind her grantee unless it be the particular plat referred to in the deeds. For the deeds constitute the contract between the parties to them, and the plat became a part of that contract by becoming by reference a part of the deeds. Any other plat made by her would not be admissible. Certainly, if subsequent to any deed or lease from her, it could not affect the rights of her lessee or grantee. *Cooke vs. Cooke,* 29 *Md.,* 538.

The description of the property contained in the advertisement is open to the objections made by the Court of Appeals in *Kauffman vs. Walker,* 9 *Md.,* 229.

And the same description appearing in the schedule, report of sales and other proceedings in the Orphans' Court, is still more objectionable, as these proceedings are matters of record, not intended for a temporary purpose, but permanent muniments of title.

The deficiency in land and defect in title being discovered after the ratification of the sale, it is not too late for the vendee to ask relief. *Marbury vs. Stonestreet,* 1 *Md.,* 147.

*William A. Stewart,* for the appellees.

If the objection made by the appellant to the ratification of the sale, that there was a misrepresentation as to the area of the ground sold, which induced the purchaser to make a larger bid for the property than he otherwise would have done, possessed any force, it was amply compensated by the Orphans' Court making a deduction of $100 from the purchase money for the deficiency. The

decisions in this State show that the objection is not one which would meet with favor from this Court.   *Hall vs. Mayhew,* 15 *Md.,* 551; *Kent vs. Carcaud,* 17 *Md.,* 291.

MILLER, J., delivered the opinion of the Court.

The appellant became purchaser of certain leasehold property belonging to the estate of the appellees' intestate, sold under an order of the Orphans' Court.   The sale was duly reported and ratified, but the purchaser subsequently filed a petition praying the Court to rescind the sale upon the grounds,

1st. That there is a material variance as to size and character, between the lot as represented and as existing, by actual measurement, and that he would not have made the purchase if he had known at the time of this deficiency.

2nd. That there is a fatal defect in the title as the deeds under which the vendors claimed the property cannot be located.

1st. As respects the first objection, it appears the advertisement by which the sale was made, described the property thus: "A lot of ground fronting on Addison street 50 feet, with *an even* depth of 123 feet, improved by three two story brick houses, each with a front of $12\frac{1}{2}$ feet, also a two story brick stable 25 by 50 feet, together with three frame stables."   The proof shows the lot had a front of 50 feet on Addison street, and was 123 feet deep, but in the rear was 44 instead of 50 feet in width, thus leaving on one side of it a small wedge-shaped deficiency.   None of the described buildings nor any part of them were on this deficiency, and it is shown the appellant was on the premises and examined or had an opportunity of examining them before he purchased.   The equitable rule on this subject is very clearly stated in *Foley vs. Crow,* 37 *Md.,* 60; and we are of opinion the Orphans' Court correctly applied it to the facts of this case by allowing a propor-

tionate abatement from the price and refusing to rescind the sale.

2nd. As to the second ground of objection, it appears the intestate derived his title to the lot under two deeds. The first dated the 23rd of August, 1841, is from Edward DeLoughery, of the city and county of Baltimore, and Susanna, his wife, (lately Susanna Hickley, widow,) and administratrix *de bonis non*, with the will annexed of her former husband, William Hickley, and also administratrix *de bonis non* of Catharine Hickley, and the property thereby conveyed is thus described :

" All that part of a lot or parcel of ground situate and lying in the City of Baltimore aforesaid, being part of the lot No. 22 in the first addition to Baltimore town, (now the City of Baltimore aforesaid,) on the east side of Jones' Falls, which is described as follows, that is to say : Beginning for the same on the northwest side of Addison street, at the southwest corner of lot No. 14 and running thence northerly bounding on the last mentioned lot 123 feet to lot No. 21, then westwardly bounding on lot No. 21 —— feet to lot No. 12, then southwardly bounding on lot No. 12, 123 feet to Addison street, and then eastwardly bounding on Addison street 25 feet to the place of beginning, which part of a lot, piece or parcel of ground above described, is distinguished on a plat *recorded* by Eleanor Addison Smith by the number 13, and is the same that by indenture bearing date on or about the 17th day of October, 1796, and recorded among the Land Records of Baltimore County aforesaid, in liber W. G., No. Z. Z., folio 13, &c., was conveyed and assigned by Joseph Moshow to Sebastian Hickley, now deceased, the father of the above named William Hickley, and husband of the said Catharine Hickley, the title to which said parcel of ground in connection with divers other estates, and property, the said William Hickley acquired as one of the residuary devisees named in the last will and testament of the said Sebastian

Hickley, which will bears date the 12th day of February, 1827, has been duly proved, and is now of record in the office of the Register of Wills for Baltimore County, aforesaid, in Liber W. B., No. 12, folio 348, &c., and as the legal representative and sole heir at law of his mother, the said Catharine Hickley, deceased intestate, she being the other residuary devisee named in said will.''

The other deed is from David Williams, bearing date the 9th of November, 1847, and in it is this description of the property conveyed, viz:

"All that part of lot No. 22, in the first addition to Baltimore town on the east side of Jones' Falls, which said part is contained within the following metes and bounds, to wit: Beginning on the north side of Addison street and at the southeast corner of lot No. 15, and running thence northerly, parallel with High street, 123 feet to lot No. 21, then westerly binding on lot No. 21, 22 feet to lot No. 13, then running southwardly binding on lot No. 13, 123 feet to Addison street, then running eastwardly binding on Addison street 25 feet to the place of beginning, which said part of a lot is distinguished on a plat *filed* in Baltimore County Court by a certain Eleanor Addison, by the Number 14, it being the same piece or parcel of ground that was assigned to the said David Williams by John Powell, by indenture bearing date the 6th day of August, 1829, and recorded among the Land Records of Baltimore County, in Liber W. G., No 200, folio 234, &c.''

It is objected that these deeds are not susceptible of location. There is no doubt of the rule that every conveyance must either on its face or by words of reference give to the subject intended to be conveyed, such a description as to identify it, and if it be land, it must be such as to afford the means of locating it. But what is the difficulty here? None certainly upon the face of the deeds themselves. The descriptions on their face or by reference to other title papers is abundantly sufficient. But it is said diligent

search has been made for the *plat* mentioned in one deed as "*recorded* by Eleanor Addison Smith," and in the other as "*filed* in Baltimore County Court by a certain Eleanor Addison," and that it cannot be found on the records or among the deeds in equity proceedings and divisions of estates in Baltimore City Court, where it is assumed by the appellant's counsel it ought to be found, if in existence. Now assuming (for the sake of the argument only) that the property conveyed by these deeds cannot be located by any other description or reference contained in them, and that the existence and production of the plat thus referred to is essential to the making out by the vendors of a good title under them, we are of opinion they have fully met and answered this objection. They have produced an original plat endorsed "Eleanor Addision Smith's Property," and purporting to be a "plat of the original lots, 22, 23, and 24, lying in the first addition to Baltimore Town on the East side of Jones' Falls, the property of Eleanor Addison Smith." It bears date "*March* 20th, 1795," is signed by George Goldsborough Presbury," as the surveyor, and what is more important as showing it to be the plat referred to in these deeds, it is marked "*filed the 21st April,* 1795." It came from the possession of Augustus Boulden, surveyor, who proves it was handed down to him by his father among his original papers, and that it is an original plat, not being marked as a copy, as it would be if it were a copy. From an inspection of this plat it not only clearly appears to be the one referred to in these deeds of 1841 and 1847, but it is apparent the conveyancers who drew these deeds respectively must each, *have had it before him,* when he made out the description of the property which each deed contains. The deeds accurately describe the two contiguous lots designated on this plat as Nos. 13 and 14, lying on the North or Northwest side of Addison street, each fronting 25 feet on said street, with a depth of 123 feet, and each

with a width in the rear of 22 feet. The description of width, depth, and locality of the property generally, with all the reference to adjoining lots, was obviously taken from this plat in each case. The fact that the appellant's counsel was unable to find it in his search is accounted for by the reasonable inference, that it had been taken from the place or proceeding where or in which it was originally *filed*, for the very purpose of drawing these and other deeds from it. It is not unreasonable to infer that the elder Boulden was the draftsman of these deeds, or one of them, and having obtained the plat for that or some other purpose, neglected or failed to return it, and thus it came to be found among his papers. But however this may be, the antiquity of the document itself, the appearance of genuineness it bears on its face, and the fact that it purports to have been "*filed*" somewhere as early as 1795, a few days after it was made, in connection with the general and special correspondence of its descriptions with those contained in these deeds, entitle it, in our opinion to be regarded as the plat referred to in them, and as proper to be used in their location.

No other objection to the order appealed from, requiring the notice of this Court has been made. We shall therefore affirm that order, and remand the cause for further proceedings.

*Order affirmed, and*
*cause remanded.*

(Decided 4th June, 1874.)