CASE 8—PETITION EQUITY—OCTOBER 15.

# Trigg v. Jones' Administrator.

APPEAL FROM HENDERSON CIRCUIT COURT.

1. JUDICIAL SALES—RESCISSION—CAVEAT EMPTOR—DEFICIENCY IN QUANTITY OF LAND—ABATEMENT OF PRICE.—The doctrine of *caveat emptor* applies to cases where relief is sought on account of liens or defects of title in land sold at judicial sales, but where a purchaser has been deceived by the action of the court or the misrepresentations of its agents as to the number of acres or quantity of land sold, the relief may be granted whether it was sought before or after the confirmation of the sale. But in this case the purchaser is not entitled to an abatement of the purchase price on account of a deficiency in the quantity of land, the other parties in interest having offered to rescind upon equitable principles.

YEAMAN & LOCKETT FOR APPELLANT.

1. A chancellor will promptly afford relief in a subsequent action from fraud or mistake occurring in judicial sales. Miller v. Craig, 83 Ky., 624; Dawson v. Goodwin, 15 B. M., 439; Cosby v. Wickliffe, 12 B. M., 202.
2. While under the rule of *caveat emptor* a court does not warrant the title to property it sells and the purchaser himself must beware, and satisfy himself on that point; where there is fraud or mistake as to the quantity of land sold the relief will be granted even after the confirmation of the sale. Falls v. Mc-Murdy, 3 Met., 168; Sugden on Law of Vendors, pp. 232 and 367-8.

W. FOSTER HAYES ON SAME SIDE.

1. A chancellor will relieve a purchaser at a judicial sale from the consequences of an innocent mistake brought about by an officer of the court and shared in by all connected with the sale. 15 A. & E. Enc. of Law, 628, *et. seq.;* Miller v. Craig, 83 Ky., 623; Dawson v. Goodwin, 15 B. M., 439; Akin v. Underwood, 11 Ky. Law Rep., 757.

W. P. COOPER AND MONTGOMERY MERRITT FOR APPELLEES.

1. The doctrine of *caveat emptor* applies in all its vigor to judicial sales, and the purchaser takes the risk as much as to the quan-

tity of land within a certain boundary, as he does as to title or encumbrances thereon. Williams v. Glenn's Adm'r, 87 Ky., 87.

2. Appellant, declined after discovering the deficiency in the land to agree to have the sale set aside, although several of the parties agreed to take the land at the price he paid for it, and pay him for his improvements. It would be inequitable to permit him to have an abatement from the purchase price under the circumstances.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

The administrator of T. B. Jones, in a suit brought to settle his estate, obtained a judgment to sell 50 acres of land to pay the debts of his intestate. The decree directed the sale of a tract of land described as "containing about 50 acres," and it was put up and sold as a tract containing 50 acres. The commissioner testifies that he supposed that that was the amount of land he was selling, it being appraised before the sale as 50 acres at $30 per acre; that the bidding at the sale commenced and continued by the acre up to a certain point, when the amount of the bid was ascertained in round numbers and the bidding was from that time in lump, and that the land was knocked off to the purchaser at the price of $2,056.50. The purchaser executed bond for the purchase price, payable in six, twelve and eighteen months, the sale was reported and confirmed, and, by leave of court, the purchaser paid the first two installments of the purchase money before maturity and accepted a deed to the land shortly after the sale which purported to convey to him the title to 50 acres, with lien reserved for the last payment. There seems to be no contradiction in the evidence as to these facts.

While the case was pending on the docket, and before the maturity of the last bond executed for the purchase price,

the purchaser filed his petition and asked to be made a party to the suit, alleging that the tract of land purchased by him, which was represented to him at the time of the sale to contain 50 acres and which he bought supposing it contained this amount, he had discovered, since the confirmation of the sale and the payments of the first two installments of purchase money, contained only 39.2 acres; and he asked that the mistake be corrected, and that he have an abatement of the purchase price out of the third bond to the extent of the deficiency, viz.: 10.8 acres, at the rate of the average price per acre, $41.13, or $444.21.

The relief sought was resisted by the administrator of intestate, and two of the heirs filed answer, in which they offered to take appellant's purchase off his hands and pay the full amount of his bonds, together with the reasonable value of any improvements which he had put upon the property, alleging that the land at the time of the sale was worth all the appellant had contracted to pay for it. The cause being heard upon the petition of the purchaser, it was adjudged that the petition be dismissed, and from that judgment this appeal is prosecuted.

On the trial of the questions of fact raised by this petition appellant was asked if he would be willing to accept the price he had paid for the land and the actual cost of his improvements and give up the land, and in answer to this question appellant said that he would not be willing to do so, because the land afforded him an outlet from the balance of his land and made it more valuable. He also answered, in response to a question from the court, that for the same reason he would not be willing to have the sale rescinded on equitable principles.

Appellant insists that he is entitled to the deduction claimed, and in support of his contention we are referred to a number of adjudications of this court which are supposed to be conclusive of this question. In the case of Dawson v. Godwin, 13 B. M., 439, it was held that "if by a mistake in a judicial sale there be more land sold than it be intended to sell, the chancellor will hold the purchaser to account for the surplus to the creditor of the person, as whose it was sold, giving to him the privilege of paying for it, or designating where it should be laid off, at some side or end;" and the court in that case announces that the same principles of equity should apply if there be a deficiency in quantity and that the purchaser could look to the party for indemnity for whose benefit and at whose instance the sale was made, and who received the proceeds of the sale, to an extent beyond what he ought to have received, in consequence of the mistake; that there was no difference in the equities of the parties in both states of case.    But the court goes on to say that in a public sale, under a decree, the owner is not the vendor; that he is passive and under coercion; the sale is by an officer of the law; "and," the court continues, "we suppose that he might not be liable for a deficiency, but the surplus should be regarded as belonging to him for the purposes of the suit."

In the case of Miller v. Craig, 83 Ky., 624, the appellant purchased at a judicial sale a tract of land supposed to contain 40 acres, when in fact it contained 128 acres, the land having been sold to pay the debts of a decedent. The debts having all been paid, the heirs at law sought to recover the cost of 88 acres or to compel the appellee to pay therefor at

the rate of his bid, and the court held that the appellants
were entitled to recover, and that the lower court should
render judgment, giving the appellee the right to elect on
which side of the tract he would have the 40 acres laid
off, or take the whole tract, paying for the excess at the
rate of his bid; that if the grounds existed which would au-
thorize the interposition of a court of equity in the case of
a private sale, "we perceive no sufficient reason for with-
holding the relief because the mistake occurred and the ad-
vantage was obtained by appellee at a judicial sale."

In the case of Cosby v. Wickliffe, 12 B. M., 202, it was held
that the chancellor had the right, in another action, to cor-
rect a mistake made in the report of a commissioner as to the
quantity of the debtor's interest in the land sold under a de-
cree in a former action.

The case of Harlain v. Brammel, 11 Ky. Law Rep., 411,
was an action brought for a rescission on the ground that
a large per cent. of the land sold at a judicial sale and
bought by the purchaser was in the adverse possession of
another, and the court held that a rescission would have
been authorized if the purchaser had been the *bona fide*
bidder.

There can be no question that the rule of *caveat emptor*
applies to judicial sales of real property, and, in the absence
of misconception and fraud, the buyer must look out for
himself. He buys at his own risk, both as to title and
quantity. This doctrine has been approved by the adjudica-
tions of this court. The case of the Farmers' Bank v. Peter,
13 Bush, 594, was a suit by the purchaser seeking a deduc-
tion from the purchase price of property bought by him

at a judicial sale to discharge liens, in the form of taxes, which existed at the date of the purchase and which were discovered after the sale, or to set aside the sale. The court in that case held that after confirmation no deduction would be made from the price agreed to be paid, nor would the purchaser be released from his obligation to pay for the sole reason that liens existed upon the property at the time of the sale which were unknown to the plaintiff, and no deductions were allowed for taxes paid by the purchaser, the court holding that "the purchaser at such a sale buys at his peril, and can not complain of a want of title, unless he applies to the chancellor before the sale is completed by an order of confirmation, or during the term in which the chancellor has the power to disregard or modify such an order."

The case of Williams v. Glenn, 87 Ky., 87, was a proceeding by the purchaser, after the report of sale had been confirmed by the court, asking a cancellation of his bonds on the ground that at the time of the sale of the land the mortgagor, for whose liability the property was sold, had no title whatever to the land, and that there was, therefore, no consideration for his bonds. And in passing upon the questions in that case the court said: "It may be regarded as a settled rule of law that after a judicial sale of real property has been completed by a confirmation of the sale the purchaser can not successfully resist the payment of the purchase price on the ground that he acquired no title to the property, unless he can show that he was induced to make the purchase by the misrepresentations of the creditor, or person making the sale, as to the condition of the title, and that he did not discover, and could not have discovered with

[4]

reasonable diligence, the true condition of the title until after the confirmation," and refused to grant the relief asked.

The United States Supreme Court held (9 Wheaton, 316): "Generally in all judicial sales the rule of *caveat emptor* must necessarily apply from the nature of the transactions, there being no one to whom recourse can be had for indemnity against any losses sustained, and in the absence of misconception and fraud the buyer must look out for himself." holding, further, that the purchaser buys at his own risk as to title and quality, but that the rule does not apply in cases where there has been fraud.

It is evident from the opinions in these cases, that whilst this court has applied the doctrine of *caveat emptor* to cases where relief was sought on account of liens or defects of title in lands sold at judicial sales, it has never refused to grant equitable relief in those cases where a purchaser has been deceived by the action of the court or the misrepresentations of its agents as to the number of acres or amount of land sold, whether this relief was sought before or after the confirmation of the sale, and there can be no valid objection to the exercise of this power in this case. However, we do not understand the law to be, either in the case of a private or a judicial sale, that a purchaser is entitled, as a matter of right, to elect to stand by a sale, and have credit for the deficiency in land purchased in cases where he fails to get the amount of land which he supposed he was buying. All that he can equitably ask is to be relieved from the consequences of the frauds or misrepresentations which have been practiced upon him.

If appellant had sought relief in this case before the

'confirmation of the sale at the hands of the chancellor, he would, we take it under the facts, have been entitled to have the sale set aside and his bonds cancelled.    Certainly he would not in good conscience have asked more, when other parties were willing to take the land at his bid, and his rights have not been enlarged by the confirmation of the sale.  Appellant refuses to consent to a rescission of the sale upon equitable principles which would require the return to him of his purchase money and cost of improvements put upon the land.

It is a maxim of courts of equity that one who seeks the aid of the court must be willing to do equity.   The delay of appellant in making his motion until after confirmation of the sale has put it out of the power of the chancellor to restore the parties to the position they occupied before the sale without his consent.   He is not satisfied to be relieved from the injury complained of, but wants to profit by the transaction.   Under this state of fact it was not error for the chancellor to have denied the relief sought.

The judgment is affirmed.