# CHARLESTON.

CASTLEMAN'S ADM'R *v.* CASTLEMAN *et als.*

Decided May 3, 1910.

1.  JUDICIAL SALES—*Confirmation—Cure of Irregularities—Mistake in Amount of Land Sold—Remedy of Purchaser.*
    If commissioners authorized by a court decree to make sale of land decreed to be sold undertake without specific authority given to sell the land by the acre, and the sale is so reported to and confirmed by the court, such confirmation will cure any irregularities of the commissioners in making such sale, and if by mistake resulting from the actions of court and commissioners less land be sold than was bid for and supposed to be sold the purchaser will be entitled to a proportionate abatement of the purchase money.

2.  SAME—*Mistakes in Amount of Land Sold—Remedy of Purchaser.*
    Such relief may be obtained by the purchaser upon petition filed in the cause, by way of defense on a rule to show cause why the land should not be resold to pay the balance of pur-

chase money, or by way of defense when sued on the purchase money notes, or by any other appropriate remedy.

3.  SAME—*Caveat Emptor—Application of Rule.*

The rule *caveat emptor* does not apply to mistakes in the quantity of land sold by the acre at a judicial sale, as it does to defects of title.

4.  SAME—*Mistake in Amount of Land Sold—Laches.*

Nor as a general rule will the rule of laches be applied to a purchaser at such judicial sale, if no equities have intervened and the rights of no one will be injuriously affected by a proportionate abatement of the purchase money, so long at least as the purchaser still retains in his hands, unpaid, sufficient of the purchase money out of which such abatement can be made.

5.  VENDOR AND PURCHASER—*Quantity of Land Sold—Allowance to Cover Errors in Survey.*

The arbitrary rule of allowing five per cent. to cover inaccuracies reasonably imputable to variations of instruments and small errors in surveys, referred to in *W. M. & M. Co.* v. *Peytona C. C. Co.,* 8 W. Va. 406, 437, and recognized in *Pratt* v. *Bowman,* 37 W. Va. 715, 721, is inapplicable to sale by the acre of valuable farming lands. In such cases only such allowance should be made as, considering the inequality of the ground and other obstacles hindering an accurate survey, may reasonably be imputable to such variations of instruments and small errors in surveys.

Appeal from Circuit Court, Jefferson County.

Action by James J. Singleton, administrator of H. W. Castleman, against Dewanna Castleman and others. Decree for defendants, and plaintiff appeals.

*Reversed and Rendered.*

*Forrest W. Brown,* for appellant.

*R. T. Barton,* for appellees.

MILLER, JUDGE:

This is an appeal from a decree of the circuit court, pronounced February 18, 1908, denying to a purchaser abatement of purchase money on account of alleged deficiency of acres sold and purchased.

By decree of August 8, 1887, and another supplementing it of October 14, 1892, special commissioners appointed were authorized to make sale, upon the terms prescribed, of "396

acres, 1 rood and 26 perches, Home Tract, and the 419 acres Mountain Tract of land in the bill and proceedings mentioned." By the latter decree the commissioners thereby appointed in place of those appointed by the former decree were directed to proceed to execute the same with such further powers as were given thereby, to-wit: To "make sale as a whole or in parcel of all the real estate in the bill and proceedings mentioned, free from the widow's dower on terms of one third cash, one third in one year, and one third payable six months after the death of Dewanna Castleman, both of said deferred payments to bear interest from date, and on the latter the interest is to be paid annually to the said Dewanna Castleman during her life, and both of said deferred payments to be evidenced by bonds of the purchaser, and secured by the retention of the title to the property until paid, or at the option of the purchaser, a deed will be made to said property, and a deed of trust taken to secure the deferred payments."

The report of the commissioners to whom the cause was referred, on August 3, 1887, reported the Home Farm as "containing 396 acres, 1 rood and 26 perches, value $55.00 per acre;" but the report of the commissioner appointed to assign dower to the widow, returned June 7, 1892, with accompanying plat and survey made by T. G. Baylor, surveyor, shows the Home Tract by metes and bounds to contain 409.65 acres.

The commissioners in their published notice of sale, set for November 15, 1892, describe the Home Tract as composed of three several tracts as follows: (1) 250 2-10 acres of fine farming land, with some woodland, but no improvements, lying south of the river road; (2) 152 5-10 acres of No. 1 land, with the improvements lying north of the river road; (3) 6 acres of land with grist and saw mill and dwelling lying on both sides of turnpike, aggregating 408 7-10 acres. They also gave notice that in making sale the first two tracts would be offered together, then all three tracts together, the choice of bids to be accepted, and referred prospective purchasers to plats of the land in their possession at Charles Town.

Parthenia Singleton became the purchaser, and the commissioners on the day of sale entered into a contract in writing with her, made a part of and returned along with their report to the court of said sale.

In their report to the court the commissioners say that they offered the land in the bill and proceedings mentioned in accordance with said decrees, as shown by the attached advertisement, and that said "Parthenia Singleton's bid was the best obtained, which was $40.25 per acre for the home farm and $4.00 per acre for the mountain land, as shown by her agreement" which was in writing and therewith submitted. The contract says that the "Home tract of 409.65 acres was knocked down to said Parthenia Singleton at the bid of $40 25/100 dollars per acre ($40-1/4) and the Mountain Tract of 419 acres was knocked down to said Singleton at four dollars ($4.00) per acre, the amount for both tracts amounting to the sum of $18,172.66."

The decree confirming said sale, December 2, 1892, recites the sale and purchase by said purchaser "of the land in the proceedings mentioned, to-wit: a tract of four hundred and nine acres and eighty five hundredths, at the price of forty dollars and twenty five cents per acre, and the Mountain tract of four hundred and nineteen acres at four dollars per acre." This decree also directs the commissioner to "at once proceed to complete said sale by making and delivering to the purchaser a deed for said lands, and taking from her her bonds for the deferred payments secured by a deed of trust upon said lands."

A subsequent decree of December 14, 1892, overruling exceptions to a Master Commissioner's report, adjudged that Barton and Boyd should be paid $1000 with interest thereon, and Marshall McCormick be paid the like sum of $1000, with interest thereon, being in addition to sums previously decreed to be paid them, and then provides how the residue of the purchase money, including the last payment to be made on the death of the widow, should be distributed, first to creditors, and then to the heirs and distributees of the decedent.

The deed made, executed and delivered by said special commissioners to Mrs. Singleton, the purchaser, December 23, 1892, recorded in Jefferson county, April 29, 1893, recites the sale of said lands "according to the terms and conditions required by said decrees, at which sale the said Singleton became the purchaser for the sum of eighteen thousand one hundred and seventy two 66-100 dollars;" the confirmation thereof by the subsequent decrees of December 2 and 14, 1892, and describes said

Home Tract by metes and bounds as containing 409 65/100 acres, and the Mountain tract as containing 419 acres, and also recites that the said first tract is according to the survey of said T. G. Baylor, in 1892, and that the bounds of the mountain land were according to a survey of Jas. M. Brown in 1847.

The first order relating to the original petition of Mrs. Singleton praying for an abatement of purchase money entered in the cause March 2, 1894, is as follows: "This the 2nd day of March, 1894, came Parthenia Singleton and asked leave which was granted to file her petition in the above entitled cause." No order is found in the record formally filing said petition, but it is copied into the record by the clerk, following this order; on November 26, 1901, the following order was entered: "This cause coming on to be heard this 26th day of November 1901 upon papers formerly read and the petition of Parthenia Singleton filed at a former term, it is ordered that the clerk of this court issue process to all parties interested in said petition returnable to next term of court, and an order of publication may issue against non-resident parties." So far as the record shows process never issued on this petition. Parthenia Singleton died March 25, 1902, a little less than three months after the entry of the last order. No further proceedings appear to have been taken upon said petition until October 19, 1906, when James J. Singleton, administrator, intervened by filing his petition, in which he refers to the former petition of his decedent, makes the same part of his petition, reaffirms each and every allegation of her petition as if in his petition again set out in full, prays that said proceedings be revived in his name, and makes parties thereto those appearing from said proceedings to be creditors, administrators and heirs at law of H. W. Castleman, deceased, and the personal representatives of those who had died pending said proceedings. He also makes the prayer of her petition the prayer of his petition and prays for process and general relief. On the day he presented this petition an order was entered filing the same, and reviving the cause in his name as administrator, and remanding the same to rules for process. Process was sued out thereon November 12, returnable to December Rules, 1906, was duly accepted or served upon all resident defendants, and there was order of publica-

tion published and posted against all non-resident defendants, and the case regularly matured and set for hearing.

After setting forth the interests of the defendants as disclosed by the record, and the several orders, decrees and proceedings aforesaid, the petition specifically charged that about January 1, 1893, information was first brought to her attention, which led the purchaser to believe that an error had been made in the acreage of the home farm as sold to her; that she employed S. Howell Brown, county surveyor, to make a survey thereof, who ascertained and reported to her that the same contained only 398¼ acres, and which she alleged was a true and accurate survey, showing a shortage or deficiency of 11.60 acres in the number of acres sold to and purchased by her. Petitioner filed with her petition as a part thereof the survey and plat of said land, so made by the county surveyor, with his affidavit thereto, that he believed his survey to be correct. Defendants did not plead to or answer the petition.

Thus is presented the question whether the purchaser upon the petitions filed is entitled as prayed for to credit upon the last purchase money bond of $6057.55, with the sum of $466.90, the price of 11.60 acres at the rate of $40.25 per acre with interest.

Clearly the sale was a sale by the acre, not in gross. True as argued the original decrees of sale did not specifically authorize a sale by the acre, but the special commissioners assumed to make a sale of the land in that way. They so reported the sale to the court, and it was so confirmed as sale by the acre. This would entitle the purchaser to an abatement of purchase money if there is a deficiency. 24 Cyc. 54, E note 7. This authority, supported by court decisions cited in the note, says: "When by mistake resulting from the actions of the court or the misrepresentations of its agents less land is sold than was bid for and supposed to have been sold, the purchaser will be allowed a proportionate abatement of the purchase price when the property was sold by the quantity, but not when sold in gross as a specific tract." When the court confirmed the action of its commissioners in making sale by the acre it thereby adopted and approved their act. In all judicial sales the court is the vendor and contracting party on the one hand, and the purchaser on the other. The commissioners are merely the

creatures of the court, and the sale is never complete until it is reported to and confirmed by the court. *Core* v. *Strickler,* 24 W. Va. 689, 696, citing *Blair* v. *Core,* 20 W. Va. 265, and *Kable* v. *Mitchell,* 9 *Id.* 492. Confirmation cures irregularities and gives the sale the same validity and effect as if made upon the precise terms of the decree. Rorer on Judicial Sales, sections 122, 127; *Robertson* v. *Smith,* 94 Va. 250 (26 S. E. 579); *Langyher* v. *Patterson,* 77 Va. 470.

It is the universal rule, and many cases in this state and in Virginia so decide, that if a deficiency in quantity is found, where the sale has been by the acre the purchaser will be entitled to an abatement, and that a court of equity will, even after deed made, abate the deficiency from the unpaid purchase money. See cases collated in 13 Cyclopedic Dig. 595, 9 a. And this rule is applicable alike to sales by the court and under court decrees, as to sales by individuals. *Watson* v. *Hoy,* 28 Grat. 698, Va. Rep. Anno. 220, and note; *Crislip* v. *Cain,* 19 W. Va. 438; *Cooper* v. *Hargis,* (Ky.) 45 S. W. Rep. 112; *Carmody* v. *Brooks,* 40 Md. 240; *Brown* v. *Wallace,* 4 Gill. & J. (Md.) 479, 508; *Marbury* v. *Stonestreet,* 1 Md. 147; *Strodes* v. *Patton,* 23 Fed. Cases 237, No. 13, 538; *Myers* v. *Lindsay,* 73 Tenn. 331; *Trigg* v. *Jones' Adm'r,* (Ky.) 42 S. W. Rep. 848.

But it is said that although the purchaser, in 1894, obtained leave to do so she never in fact filed her petition; that the order of November 26, 1901, treating it as having been filed at a former term, and directing process thereon, was a misrecital, and that no process having been in fact issued thereon, defendants were not bound thereby, and that not only these proceedings, but the proceedings upon the amended petition filed by the administrator in 1906, the purchaser in her petition admitting knowledge of the alleged deficiency as early as January, 1893, came too late, and that relief was rightfully denied under the rule *caveat emptor,* and because of laches, and because the decrees confirming the sale and distributing the proceeds thereof to creditors and distributees being final were not reviewable, except upon bill of review filed in time and with proper averments.

The authorities do not support the position of counsel. A purchaser at a judicial sale is not precluded by such decree

from obtaining relief from such mistake. Relief may be obtained in such cases by defense to a rule against the purchaser to show cause why the land should not be resold to pay the balance of purchase money. *Jones* v. *Tatum*, 19 Grat. 720; *Crislip* v. *Cain, supra.* Also by petition filed in the cause by the purchaser. *Watson* v *Hoy, supra; Marbury* v. *Stonestreet, supra; Brown* v. *Wallace, supra.* While the rule *caveat emptor* is applicable to all judicial sales so far as title is concerned, it has never been applied either in Virginia or in this state so far as we can find to cases of deficiencies in quantity of land where sold by the acre. *Watson* v. *Hoy, supra,* 710. In the case just cited the court below appears to have been of a different opinion, but Judge Burks, referring thereto, says: "I cannot agree to this. It is true that in Virginia the general rule would seem to be that objections by purchasers to judicial sales for defect of title must be made before the sale is confirmed by the court, and that such objections afterwards made came too late," citing cases. "But," says he, "I apprehend the rule has no application to the equity of a purchaser arising from after discovered mistake, fraud, or other like matter. Courts of equity are always ready to relieve innocent injured parties in such cases, unless by reason of acquiescence, laches or other special circumstances, relief would be inequitable. There were no such circumstances precluding relief in this case." And, at page 711, he further says: "The mistake can be rectified and compensation made to appellant by allowing for the ascertained deficiency a proper abatement of the balance of purchase money still owing by him; and thus, while doing justice to him, no harm will be done to others. It would be singular indeed if this could not be done by a court of equity which by its agents is a party to a mistake it is called upon to relieve against."

Nor do we think the rule respecting laches applicable. No one can be injuriously affected by the abatement. At least no equities appear, and none are alleged by way of defense. The last payment of purchase money is still in the hands of the purchaser, or her representative. She is not suing to recover back money paid. Within a year after sale and confirmation thereof, and after discovering the mistake, she presented and obtained leave to file her petition setting up the mistake and praying for an abatement, thus making a record in the cause of her claim;

and though she afterwards delayed suing out process and bringing the matter to an issue the last payment was not due and did not become due, except the interest, until the death of the widow. No one has been prejudiced or injured by the delay, so far as appears, and if a mistake was actually made there is nothing to preclude the court in granting the relief prayed for. In a general creditors suit the filing of a petition by a creditor in a pending suit stops the running of the statute of limitations. *Jackson* v. *Hull,* 21 W. Va. 601. In *Ewing* v. *Ferguson,* 33 Grat. 548, it was decided, that the first action taken by a party for the assertion of his claim by legal process whether that be by the issuing of process commencing suit, or the filing of a petition in a suit already commenced, is treated as the institution of a suit, and from that time the statute of limitations ceases to run against him. These cases it is true were creditors suits, and the petitions were creditors petitions filed therein, and are not strictly applicable to cases like the one we have here. However, when the purchaser asked and was given leave to file her petition in the cause, that was a step which she had the right to take, was the assertion of her right negativing abandonment thereof, or acquiescence therein, and gave notice to the court, her vendor, of her claim to abatement of purchase money, and of which the court took notice by giving her leave to file it, and by afterwards treating her petition as filed, and directing process thereon. The petition thus became a part of the record. *Parks* v. *Petroleum Co.,* 25 W. Va. 108. But the petitioner was not bound to have filed any petition. She might have waited until sued on her bond, or was proceeded against by rule to resell the property. So long as she had the money in her hands time did not run against her right to defend the collection of the purchase money. *Smith* v. *Ward,* 66 W. Va. 190 (66 S. E. 234).

It is further contended, in support of the decree below, that petitioner did not make out a case for relief, that the petition was not sworn to as it is claimed a bill of review or petition to rehear, based on after discovered evidence, is required to be. The petition is not a bill of review, nor a petition to rehear the decrees, and the rules applicable thereto are inapplicable. The petition charged a mistake, a shortage in the land sold.

No plea or answer of the defendants denied it. It must be treated as taken for confessed.

Another question presented by the record, but not by counsel, has given us some trouble. The shortage of 11.60 acres is less than three per cent. of the total acreage sold. Should the arbitrary rule of five per cent. first announced by this Court in *W. M. & M. Co.* v. *Peytona C. C. Co.,* 8 W. Va. 406, 437, and recognized in *Pratt* v. *Bowman,* 37 W. Va. 715, 721, be applied here? If it should, the shortage being less than five per cent., petitioner did not make out a case for relief. One answer to this question, suggested in council, was that the rule was inapplicable to cases of sales by the acre, but only where land is sold as containing a definite number of acres "more or less," or "estimated to contain" a certain number of acres, or with like descriptive words. But as this allowance of five per cent. is intended to cover inaccuracies reasonably imputable to variation of instruments and small errors in surveys, *Pratt* v. *Bowman, supra,* p. 721, we do not see why upon principle, it should not be applied in cases of sales by the acre, for in either case parties must necessarily be deemed to contract with reference to all inaccuracies. Hilliard on Vendors, (2nd Ed.) 329. This writer says: "But, in general, on a sale of land by the acre, relief is to be granted for all deficiencies, not reasonably imputable to the variation of instruments and small errors in surveys, whether the purchaser has expressly retained an election to have the tract surveyed or not." Citing therefor *Nelson* v. *Carrington,* 4 Munf. 332. But where and how did this arbitrary rule of five per cent. originate? Judge HOFFMAN in *W. M. & M. Co.* v. *Peytona C. C. Co., supra,* at page 437, says: "It is settled, in Virginia and West Virginia, that when a person has sold and conveyed a tract of land, described as containing a definite quantity, at a specified price, it is presumed that the estimated quantity was believed to be substantially correct—within five per cent. of exact accuracy; that it constituted a material element in the determination of the price; and that, unless it appear that considerable uncertainty or actual risk as to the quantity was contemplated or intended; if in fact the quantity is afterwards ascertained to be materially less, and the purchaser properly asserts his right in a reasonable time and under reasonable circumstances, a court of equity

will grant him relief. Though the sale be not by the acre, but by the tract in gross, this nevertheless is now the rule of decision. But in many—perhaps most cases of sales by trustees and other fiduciaries or officers, it may be different. This, however, it is not necessary now to determine." No cases, however, are cited by Judge HOFFMAN declaring this arbitrary rule. · He likely deduced it from the decided cases in which relief has generally been denied where the deficiency has been less than five per cent. But we do not think that in this day of improved methods and instruments, such an arbitrary rule should be applied, especially when involving valuable lands like those involved here. A shortage of more than eleven acres of very valuable farm lands, practically level, in a survey of 409 acres, or 398 as the case may be, is entirely too much of a discrepancy to reasonably impute to variations of instruments or small errors in surveys. Certainly lands of the character of these lands can and should be surveyed with more accuracy than that. The deficiency here we do not think can reasonably be imputed to such inaccuracies, and if not the relief ought· to be granted. Hilliard on Vendors, *supra; Young* v. *Craig,* 2 Ky., 5 Bibbs Rep. 270; *Grundy* v. *Grundy,* 12 B. Mon. (Ky.) 269.

In the absence of any showing to the contrary we think the petitioner was entitled to the relief prayed for. The decree below will therefore be reversed, and such decree as the circuit court should have entered will be entered here.

*Reversed and Rendered.*