## CIRCUIT COURT OF CLARKE COUNTY

George H. Ballinger

v.

Lucie S. Price, Executrix of
Clifton E. Price

September 1, 1959

By JUDGE ELLIOTT MARSHALL

This case involves a controversy between the purchaser and vendor of a valuable farm in Clarke County.

In 1949 the complainant and Clifton E. Price, the defendant's decedent, executed a written contract for the purchase of the farm by the complainant. The contract recited that the tract contained "600 acres, more or less," and that the sale was to be "by the acre," the purchase price being "$90.00 per acre."

The following paragraph was included in the contract:

It is further understood and agreed that the purchaser is to have a survey made of the property to be conveyed at his expense in order that the metes and bounds may be incorporated in the deed.

Pursuant to the contract the purchaser employed Mr. Bond, a surveyor, who made the survey the metes and bounds of which were incorporated in the deed. Bond computed the acreage from his survey and the metes and bounds description contained a recital that the tract contained 611.9 acres, more or less, which the deed purported to

convey and the purchaser paid the vendor at the rate of $90.00 per acre for the purported acreage.

While Bond recited in his report that he had made a transit survey it is obvious from the metes and bounds description that he probably did not do so. The bearings are reported in degrees and fractions to the nearest quarter-degree rather than degrees and minutes as in case of a transit survey. The distances are reported in rods to the nearest tenth (a tenth of a rod being approximately 1.7 feet) but it is probable that there was little attempt to accurately measure the distances in tenth-rods in all instances because many of the distances are reported in rods without tenths, a coincidence which taxes credulity.

In short, this survey did not purport to be as accurate as a modern transit survey which would measure the angles to the nearest minute and the distances to the nearest tenth-foot, although the surveyor did attempt to compute the acre to the nearest tenth-acre. Of course, a survey which is subject to such margins of error may be perfectly satisfactory to all parties concerned because land values sometimes do not justify the much higher cost of a modern transit survey over rough terrain involving careful allowance for instrument variance and chain measurement to the nearest tenth-foot and with the attendant problems of more careful levelling of the chain itself.

In 1957 the complainant, having cause to believe that the former survey was inaccurate, employed Mr. Good, another surveyor, who made a modern transit survey which disclosed that the tract contained only 600.17 acres, a figure very close to the acreage contemplated by the parties in their contract, and instituted this suit in equity to recover an amount equal to the deficiency of acreage of $90.00 per acre.

The evidence consisted of the two surveys, Good's testimony (Bond not being available to testify because he had since died) and the testimony of two witnesses familiar with the boundaries. Although in some instances there was doubt as to whether identical corners were used, Good demonstrated several inaccuracies in bearings and distances of the Bond survey; but the most glaring defect was that the Bond survey could not be made to close by some 80 feet.

There was no evidence to the effect that the Good Survey was inaccurate. The testimony in behalf of the defendant tended to show that the center of an abandoned road forming one of the boundaries was not located by Good in the same places as by the Bond survey but the witnesses said that the line established by Bond was *inside* the line that was established by Good who followed a fence which had been erected subsequent to the Bond survey. Obviously the Good survey would thus include more land that the Bond survey.

The evidence leads inevitably to the conclusion that the Good survey is much more nearly accurate than the Bond survey. It was obviously so intended because its bearings were ascertained by transit rather than compass and its distances to a much higher tolerance. It was probably a much costlier undertaking. But, of course, it is not perfectly accurate. As was said in the argument by Mr. Johnson, Counsel in the case of *Weaver* v. *Carter*, 37 Va. (10 Leigh) 37, 46 (1839): "Did any one ever believe that a survey, however carefully made, does or can ascertain the true quantity of the land?" This was in 1839, but even with the modern methods of today a perfectly accurate transit survey is an utter impossibility, because no matter how carefully allowance is made for variations in the surveying instrument itself it is not designed for perfection nor are the human hands which manipulate it impervious to error. Even if we ignore human error, no matter how carefully distances are chained and checked absolute accuracy cannot be achieved because the chain cannot be held absolutely level and allowances for deviations in metal chains because of change of temperature cannot be free from all error. Nor can the mathematical adjustments made by computation of latitude, and departure, with the forced closing of the boundaries of the survey eliminate all error. However, small margins of error such as these are inconsequential. It is common knowledge that a carefully conducted transit survey of a tract of comparatively level land of 600 acres should be within one, or, at most, two acres of perfect accuracy. A compass survey such as was made by Bond would entail a much greater margin of error, but it should not be as large as eleven acres in six hundred.

We have labored the discussion of the relative accuracy of surveys because this is a suit in equity to recover a *sum certain in money* paid under mistake of fact. In many jurisdictions the similar cases involve actions at law for money had and received, but in Virginia the suit in equity has been stamped with approval though purely for a money judgment and though adequate remedy at law might exist, possibly because a court of law might find difficulty in dealing with a claim which can never be determined with absolute certainty. Although the point does not seem to have been raised in any of the cases (153 A.L.R. 29) it would seem that the plaintiff in *indebitatus assumpsit* could never prove a *liquidated* amount to the last penny, or even dollar, because his surveyor would be forced to admit that the survey involved some margin of error. The legal requirements of the certainty of liquidated claims might be the very reason that Virginia has approved the countenance of such controversies in any court of equity, where, unhampered by the legal requirements of certainty, the chancellor can do "substantial" justice between the parties, even though it is recognized that he can never be certain that he is not awarding too much or too little to the aggrieved party.

However, the chancellor must certainly keep in mind that the effect of his decision, though probably "substantially" just, may unjustly enrich one and impoverish the other of the parties to some extent. In this case, assuming the complainant should prevail the court may award him as much as $90.00 or perhaps $180.00 too much or too little, assuming that the Good survey is accurate to the degree ordinarily expected.

The real problem to be solved is the construction of the contract between the parties.

The contract itself expressly provides that the sale is one "by the acre." The cases in some jurisdictions seem to indicate that the decisive test is whether the sale is "by the acre" or "in gross"; granting relief in the former and refusing it in the latter. In Virginia, under the opinion in *Blessing's Adm. v. Beatty*, 40 Va. (1 Rob.) 287 (1842), such a test is not conclusive. The court very ably points out that the test should be the actual risk contemplated by the parties, irrespective of whether

the contract might be labeled one "by the acre" or "in gross."

In examining the contract in question, it is apparent that the exact acreage was not the impelling reason for the sale of the farm. The parties, of course, knew the approximate boundaries and the purchaser desired to acquire the farm itself rather than a certain number of acres. The estimated acreage was only the yardstick for determining the purchase price. The contract would have been specifically enforceable with adjustment of purchase price unless the survey exposed a considerable discrepancy. In fact, the purchaser accepted the land as containing some eleven acres in excess of the estimate. While the contract does not so specify, by implication, and by the subsequent action of the parties, it is plain that it was contemplated that the purchaser should provide a computation of the acreage by survey satisfactory to himself and that the total purchase price should be determined according to such computation. The parties, obviously, intended to be bound by such computation except in case of glaring discrepancy in comparison to the acreage estimated in the contract. The purchaser was given the election as to the type of survey which he desired and he alone could determine the degree of accuracy according to its cost. Therefore, the miscalculation itself is not mutual. It is solely the act of the purchaser. It cannot be in any way attributable to the seller. It is just as if the purchaser had made the error, himself. However, equity will in some cases correct mistakes which are not mutual where the discrepancy is gross and grievous. In the last analysis there was a mutual erroneous assumption that the computation was correct.

Under these considerations, it seems to me that the parties both assumed the risk that the surveyor's computation was inaccurate to the usual degree. They did not, however, assume the risk that the computation was so erroneous that the subject matter would be materially affected or that it would be so gross as to be shocking to the conscience of the court.

As we have seen, the error is greater than might usually be anticipated, even in compass surveys. We then must determine whether it is so gross and shocking as to justify its correction by a court of equity. This is

one of the most difficult problems which the chancellor is called upon to decide. It must be decided in the light of all the facts and circumstances of each individual case.

> The apparent conflict and discrepancies in the adjudicated cases involving mistakes as to quantity arise not from a denial of or a failure to recognize the general principle, but from the difficulty of its practical application in particular cases in determining the questions whether the contract was one of hazard as to quantity or not and whether the variance is unreasonable. The relative extent of the surplus or deficit cannot furnish, per se, an infallible criterion in each case for its determination, but each case must be considered with reference not only to that but also to its other peculiar circumstances. The conduct of the parties, the value, extent, and locality of the land, the date of the contract, the price, and other nameless circumstances, are always important, and generally decisive. *In other words each case must depend on its own peculiar circumstances and surroundings.* 55 Am. Jur. 526.

Most of the cases involve mutual *estimates* of acreage based on former surveys or descriptions in deeds. These disparities are mostly attributed to ordinary errors occasioned by deviation of surveying instruments, etc. and are not too helpful because surveys have improved in accuracy over the years, and a higher degree of accuracy is naturally to be expected. The courts often remark upon the percentage of error. A percentage of error of about two per cent as in the instant case has often been charged to ordinary errors of survey, and relief denied. In West Virginia, at one time, the courts apparently attempted to establish a firm rule that errors of less than five per cent should not be corrected in case of sale "in gross." *Castleman's Adm. v. Castleman,* 68 S.E. 34 (W. Va. 1910).

I have found only two cases with facts approaching those of the instant case. They are cited in 153 A.L.R. 41.

In *Wilson* v. *Randall* 67 N.Y. 338 (1876), the parties mutually agreed that a survey should be made by the *defendant's* agent to determine the acreage to be paid for at the rate of $350.00 per acre. There was a deficiency of 7.68 acres in purported 56.15 acres, *an error of thirteen per cent.*

In *Mobley* v. *Harrell*, 13 Ga. App. 483, 79 S.E. 372 (1913), both parties selected the County Surveyor to make the survey. There was a deficiency of 18.47 acres in a purported 133.66 acres, *an error of eleven per cent.*

In both of these cases, the vendor recovered. However, it must be observed, that in neither case, the error was in any way attributable to the complainant. In each case the percentage of error was more than five times that of the instant case.

While not conclusive, because modern equity will certainly not visit upon an innocent party the product of an honest mistake though some negligence may be involved, it is only fair that the party responsible for the miscalculation shall suffer to some extent. An error of two per cent for which both parties are equally responsible might shock the chancellor, whereas a much more grievous mistake attributable to the act of the plaintiff might not.

Under all the facts and circumstances of this case, it is my opinion that the mistake is not of sufficient magnitude to shock the conscience of the chancellor and to afford the relief sought. I will, therefore, decree that the bill of complaint shall be dismissed.